# Charlestown.

REXROAD, ADM'R, *v.* WELLS *et al.*

Decided September 7, 1878.

1878
August Term.

1. If an executor or administrator *c. t. a.* is embarrassed in the performance of his duty, on account of doubt as to the true meaning of the will, he has a right to file a bill, asking the court to construe the will in advance of his action on his own construction, so as to avoid the hazard of litigation. But if he is seeking merely the construction of a clause in the will, which in the actual condition of the estate, as shown by his bill, is no present embarrassment to him in the performance of his duties, and probably never will be, the court ought to dismiss his bill on demurrer.

Appeal from and *supersedeas* to a judgment of the circuit court of Ritchie county, rendered on the 26th day of April, 1877, in a cause in chancery, in said court then pending, in which Noah Rexroad, adm'r, was plaintiff and Benjamin Wells and others were defendants, allowed on the petition of said Rexroad.

Hon. James Monroe Jackson, judge of the fifth judicial circuit, rendered the judgment appealed from.

GREEN, PRESIDENT, furnishes the following statement of the case:

In May, 1876, Isaiah Wells died, leaving a will whereby he left his to children, eleven in number, legacies varying from $25.00 to $1,200.00, and amounting in all

to $2,985.00, and also to his wife $1,000.00, all of them to be paid out of his estate; and then willed the residue of his estate real and personal, if any remained, after these legacies had been paid, and all his just liabilities discharged, should be equally divided among his legatees, except one of his sons, William T. Wells, who was to receive out of his estate only his legacy of $25.00.

He appointed executors of his will, who refused to qualify; and on July 8, 1876, the county court of Ritchie appointed Noah Rexroad his administrator with the will annexed; and he qualified. The widow renounced the will.

He left at his death a personal estate exceeding $5,000.00, and one hundred and thirty-five acres of land, and a water grist and saw mill and six and a half acres of ground attached, and a house and lot in Harrisville, and a small interest in another house and lot in said town.

Within less than a month after his qualification the administrator, with the will annexed, instituted a suit in the circuit court of Ritchie county against the legatees under the will. In his bill he alleged the above facts, and that the real estate was incapable of division, and that he is unable to determine in his own mind, whether the will authorizes him to sell the real estate, of which the testator died seized, and divide the proceeds thereof equally among the heirs of said Wells; and therefore he had filed this bill, asking the court to construe the will, that he might act legally in the premises; and if the court should so construe the will, as giving him power to sell the real estate, that the court would decree, that the said real estate should be sold by him as special commissioner; and for general relief.

One of the legatees, Isaiah Wells, demurred to this bill; and on October 25, 1876, the court sustained the demurrer, and decreed the costs against the plaintiff, but on motion of plaintiff gave him leave to amend his bill.

In February, 1877, an amended bill was filed. In

addition to the facts, stated in the original bill, this amended bill states, that the testator, Isaiah Wells, left a personal estate, consisting of notes and accounts, gold and silver, grain, farming utensils and household and kitchen furniture, that the personal property had been sold and his whole personal estate amounted to $8,121.79, as of November 20, 1876, but in this amount was included a note of George W. Wells to his father, which as of that date amounted to $786.21 ; but on the face of this note there was a provision, that at the death of the obligee, Isaiah Wells, the testator, it was to be cancelled by his administrator and surrendered to the obligor. Deducting this, the amount of the personal estate was $7,335.58.

A copy of this note is filed with the bill. It is dated October 31, 1873, and is an obligation to pay to Isaiah Wells $700.00, and concludes thus : "And which the obligor accepts and agrees to take as his full interest in the estate of Isaiah Wells, and which note is to be given up to him at the decease of Isaiah Wells by whoever may be the administrator of said Wells's estate, to be cancelled." and the plaintiff, in his amended bill, says, that he is advised by counsel, that upon demand being made by said George W. Wells, he, the plaintiff, was bound to deliver up this note. And that such demand has been made.

This amended bill also states, that included in this sum of $8,721.79, are also obligations of another son of the testator, Benjamin Wells, who was insolvent, one of them unsecured, amounting, as of said date, to $26.91, and the others secured by a deed of trust, amounting on the said 25th of November, to $1,398.86; but that the real estate whereby this sum was secured, would not, the plaintiff believed, bring $800.00 in cash, which would reduce the personal assets of the testator. That the testator was also security for his said son, Benjamin, as late sheriff of Ritchie county ; and that he owed the State of West Virginia for non-payment of taxes collected in 1868, $183.93.

1878
August Term.
———
Rexroad, adm'r,
v.
Wells et al.

The widow's claim, as one of the distributees of the estate, is estimated in this amended bill, as one-third of the gross amount of the personal estate, including the debt of $786.21 of George W. Wells not really due, instead of the net amount after paying the debts. This error amounts to about $700.00. The legacies too are estimated, as if they were due on November 20, 1876, instead of twelve months after the death of the testator. This error exceeds $100.00. The costs of administration are estimated at $800.00, a sum probably exceeding the actual costs, which will be incurred by several hundred dollars.

Calculating in this manner, and supposing the entire debt of Benjamin Wells can be made, and assuming that the debts due from the estate were $1,192.05½, which was the amount of debts, which had been presented to the administrator, with interest to November 25, 1876, the personal estate, according to the plaintiff's estimate in the amended bill, would be insufficient to pay all debts, the widow's distribution share, costs of administration and all legacies, by $348.74.

The amended bill also alleges, that when the testator's will was being written, he said, he desired his real estate all sold, as soon as his children were able to buy his real estate, and pay off the legacies and their interest in the residue of the estate; and the property was incapable of division.

The amended bill prays, that if the court should be of opinion, that the testator did not leave a sufficient amount of personal estate, to pay the widow's distributive share, the debts, costs of administration and legacies, then if the court should think, that under the circumstances the will authorized him as administrator to sell said real estate, that the court will decree it to be sold by him as special commissioner, and the proceeds properly paid out; and for general relief.

Depositions were taken, proving that the day before the testator made his will, he said, he would like to have

the mill property in some of the children's hands, but that none of them were able to pay the other children, and it would have to be sold; and directly after the will was written he said, he would have liked, if some of the sons could have owned the property, but it was impossible, because none of them had the means, and he did not think they would ever have, and the property would have to be sold.

George W. Wells demurred to this amended bill; and on April 26, 1877, the court sustained the demurrer, and dismissed the bill, and decreed, that George W. Wells recover of the plaintiff his costs.

*R. S. Blair*, for appellants, relied on the following authorities:

3 Gratt. 5; 8 W. Va. 31; 6 Gratt. 339, 350; 12 Gratt. 117; 7 Paige 421; 10 Gill & J. 480; *Id.* 143; 2 Redf. on Wills (2nd ed.) 209; Code W. Va. 506; 3 Lom. Dig. 14; 13 Ves. 209; 1 Dorr 249; 23 Gratt. 62; 1 Redf. p. 437, § 31.

*John H. Hutchinson*, for appellees.

GREEN, PRESIDENT, delivered the opinion of the Court:

The only question involved in this case is: Did the court err in sustaining the demurrer to the plaintiff's bill and amended bill and dismissing them at his costs?

If the plaintiff was embarassed in the performance of his duties, as administrator with the will annexed of Isaiah Wells, by reason of doubt as to the meaning of the will, he had a right to file his bill to ask the court to settle in advance the construction of the will, if it was doubtful, and thus save the hazard of litigation, which might arise from construing the will himself and acting on such construction.

In the actual condition of the estate when this suit was instituted, as shown by the bill and amended bill, could

the administrator, when this bill was filed, have been really so embarrassed? The real condition of the estate, as shown by the statements of the bill and amended bill, was materially different from what the amended bill states it to be. This arises from mistakes made in the amended bill, which have been pointed out in the statement of the case.

The following is the true condition of the estate, as ascertained from the facts stated by the plaintiff in the amended bill. If we regard the debts due from Benjamin Wells as capable of being made, and the debt due from George W. Wells as not really a debt, which it was not, as his note was directed to be cancelled and surrendered, the entire personal assets amounted on November 20, 1876, to $7,335.38, after the deduction of insolvent debts due the testator, estimated by plaintiff as $192.49. The total amount of debts due from the testator as of that date, excluding the debt of $183.93 due the estate, and for which the testator was the surety of Benjamin Wells, was $1,192.05½, leaving of personal estate, after the payment of these debts, $6,143.33½, of which the widow as distributee was entitled to one-third, or $2,047.78, which would leave a balance as of November 20, 1876, wherewith to pay the legacies and cost of administration, of $4,095.55½, the interest on this to about May 1, 1877, when these legacies became payable, that is to one year after the death of the testator, would be $108.14½, making $4,204.00, out of which legacies had then to be paid, amounting to $2,985.00, and, after this payment, there would still be a personal estate in the hands of the administrator of $1,219.19, to pay the costs of administration, a sum much more than sufficient for that purpose.

If however we take the supposition of the plaintiff, as stated in the amended bill, that of the debts, due the estate from Benjamin Wells, only $800.00 could be made out of $1,325.77, this would diminish the assets of the estate $525.77; but as by the will a legacy of $300.00 is given to Benjamin Wells, this must be substracted there-

from, as it would be paid out of his indebtedness to the estate, which would leave as the actual diminution of the assets of the estate $225.77; and if we further suppose, that the administrator will have to pay the debt, due the State of West Virginia, amounting to $183.93 exclusive of interest, for which his testator was the surety of Benjamin Wells, it would make a difference of the balance in the hands of the administrator of $410.71, which may be increased about $100.00 by interest and costs. Call it $509.00, and it would still leave, after the payment of all debts, the distributive share of the widow and all legacies, the sum of $700.00 in the hands of the administrator to pay the costs of administration, a sum in all probability more than sufficient to pay such costs.

This calculation too is based on the supposition, that all the debts, which the administrator supposes to be insolvent, are lost, and that all the claims, which have been presented against the estate are just, and will have to be paid in full. I think therefore it is clear, that in all probability, from the statements made in the bill, the administrator cannot be embarrassed from having to construe this will, as he will by his own showing have enough of personal assets in his hands, to perform all the duties imposed on him as administrator; and that the entire real estate will remain to be divided among the children of the testator other than Wm. T. Wells, as directed by the testator's will. He can have therefore no interest in obtaining the opinion of this Court, whether under a state of facts, never likely to occur, he would be authorized to sell any portion of the real estate.

The court therefore did not err in sustaining the demurrer to his bill and amended bill, and dismissing the the same at his cost. Even had the condition of the estate been much worse than it is, he would not have been justified in instituting such a suit, at the time he instituted the same. It was brought in less than a month, after he qualified as administrator with the will annexed, and

therefore, at a time when it is impossible to suppose that

he could have felt any embarrassment from not knowing the true construction of the will, had there really been any difficulty in its construction.

Had there been such difficuly as he suggests, it would have been his duty to have collected the assets of the estate, and paid all its debts; if then there was an insufficiency of assets in his hands, to pay all the legacies and the legatees and devisees had not settled the whole matter among themselves, which it is almost certain they would have done, and some legatee had insisted on a sale of the land to pay the small balance, which might possibly be due him, it might then have been his duty to have consulted counsel, and if advised, that it was a doubtful question, whether it was his duty under the will to sell the land or not, he might have been justified in bringing this suit; and the court would under the circumstances have overruled a demurrer to his bill, unless it thought, the meaning of the will so clear, as not even then to have justified the filing of such bill.

As the case was presented, there was not the least necessity for the institution of the suit; it was clearly the duty of the administrator, before instituting the suit, to have had the deed of trust, executed by Benjamin Wells, foreclosed, and by such sale have ascertained, whether the whole debt due from him could be paid by such sale. There could have been no embarrassment to the administrator, in the performance of his duties, in waiting till after such sale, before the institution of this suit; and it would clearly have been improper in the court, to have assumed jurisdiction of this case, simply because the administrator supposed, that this property, when sold, would not pay the debt, on which it was security, by several hundred dollars. Whether this be so, could without the least embarrassment to the administrator, have been definitely ascertained, before instituting this suit. And it ought certainly to have been done.

It is said however by the appellant's counsel, that the

court ought not to have dismissed the amended bill, because the plaintiff had a right to be instructed by the court, whether he should surrender to George W. Wells his note, and also pay him his legacy. It is a full reply to this suggestion to say, that the plaintiff did not ask any instruction of the court in this matter. On the contrary the amended bill shows on its face, that he did not desire any such instruction; for in estimating the assets of the estate, he excludes this note, and in estimating the legacies to be paid by him, he includes the legacy to George W. Wells.

Again it is said by appellant's counsel, that the administrator had on the statements of the amended bill a right to file a bill, under the provisions of section 7, ch. 86 of Code of W. Va. p. 506; and that the court, instead of dismissing the amended bill at his costs, ought to have given him leave to file an amended bill again, on the authority of *Jameson* v. *Deshields*, 3 Gratt. 5, and *Stewart* v. *Jackson*, 8 W. Va. 31. It does not appear that he asked any such leave; and this leave had once before been, on his request, granted to him; and it further does not appear from the statements, contained in the amended bill, or otherwise in the case, that the plaintiff was entitled to any relief; and it is only in such case the court ought, according to these authorities, to permit an amendment of the bill, when a demurrer has been sustained. Section 7, ch. 86 of Code of W. Va. p. 506, simply authorized the personal representative of a decedent, *when the personal estate of a decedent is insufficient for the payment of his debts,* to commence a suit in equity, to subject his real estate to the payment therof in the manner and under the circumstances prescribed in said section.

The amended bill shows, that the personal estate of the decedent was more than three times as much, as was necessary to pay his debts; and of course the administrator could institute no suit under this section. If he could have done so, it must have been an original suit, and

could not have been done by another amended bill in this suit; as the object, sought by it, would have been entirely different from the objects, sought by this bill, and the parties to such suit would have been also different, as shown by the provisions of section 7, ch. 86 of Code of W. Va.

The decrees theretore of October 20, 1876, and April 26, 1877, must be approved, and affirmed; and the appellees must recover of the appellant their costs in this court expended, and $30.00 damages.

THE OTHER JUDGES CONCURRED.

JUDGMENT AFFIRMED.