# CHARLESTON.

BERRY v. WIEDMAN *et al.*

Submitted June 16, 1894.—Decided December 8, 1894.

1. HUSBAND AND WIFE—MARRIED WOMEN—RESULTING TRUST.
   When a husband purchases property with his wife's money, and takes the deed in his own name, a resulting trust is raised in her favor; unless it is shown that she intended the money as a gift or loan to her husband, the establishment of which fact devolves on the husband, or those claiming under him.

2. HUSBAND AND WIFE—GIFT - LAPSE OF TIME.
   Mere lapse of time is not sufficient to establish a gift on her part, in so far as his collateral heirs are concerned, if he has indulged her in the belief of ownership, and allowed her to improve the property with her separate estate.

JOSEPH MORELAND for appellants, cited Code, c. 86, s. 1; 16 W. Va. 686; 12 W. Va. 350; 16 W. Va. 108; Sto. Eq. Pl., § 218; Id. § 128; Id. § 141; 10 W. Va. 1; 15 W. Va. 666; 8 W.

Va. 29; 19 W. Va. 179; Code 1868, c. 66; s. 1; Id. c. 166; p. 735; 25 W. Va. 816; 30 W. Va. 505; 1 Minn. Inst. 299; 14 W. Va. 338; 22 W. Va. 130; 16 Gratt. 275; 27 W. Va. 761; 20 W. Va. 571; 11 W. Va. 122; 13 W. Va. 29; 22 W. Va. 673; 23 W. Va. 499; 24 W. Va. 405; 27 W. Va. 206; 24 W. Va. 199; 29 W. Va. 441; 37 W. Va. 373; 32 W. Va. 203, 447; 37 W. Va. 396; 14 W. Va. 322; 14 W. Va. 338; 37 W. Va. 400; 13 W. Va. 67; 31 Penn. St. 454; 20 W. Va. 545; 13 W. Va. 68; 24 S. C. 273; 58 Am. Rep. 261 and note.

P. J. CROGAN for appellee.

1.—*Misnomer—Plea in abatement.*—Code, c. 125, s. 14, 15.
2.—*Parol proof of resulting trust.*—7 Leigh 577; 15 W. Va. 577; 2 Wash. R. P. 505.
3.—*When resulting trust arises.*—23 W. Va. 475; 22 W. Va. 355; 2 Pom. Eq. § 1043.
4.—*Wife,s freehold lands prior to Code 1868.*—Min. Inst. 311; 30 W. Va. 507; 32 W. Va. 143.
5.—*Gift married women, prior to Code 1868. Husband trustee.*—1 W. Va. 205; 19 S. E. Rep. 382; 2 Sto. Eq. 1380.
6.—*Distribution of decedent's personal estate.*—Code, c. 78, s. 9.

DENT, JUDGE:

At July rules 1891, in the Clerk's office of the Circuit Court of Preston county, Helen A. Berry, plaintiff, filed her bill in chancery against Caroline Wiedman, S. A. Litman, Carl Litman and Mrs. A. J. Morris, heirs of her husband, Oliver Berry, deceased, to compel a conveyance to her of the legal title to a certain house and lot situated in Evansville, in said county. She alleges that the lot was originally purchased and paid for with money advanced to her by her father, but that the deed was made to her husband; that he always recognized the property as hers; and that she, with this understanding, during the years 1887, 1888, 1889, built thereon, with her separate funds, a house costing more than the property would sell for. After her husband's death, which occurred in the year 1891, his heirs set up claim to the ownership of the property, and thereupon she brought her suit to compel a conveyance of the legal title. On the 14th

day of September, 1891, the defendants appeared, and filed their joint answer, in which they denied the plaintiff's ownership of the property, or that she had invested any money in building the house thereon, but claimed that the whole property was bought and improved by Oliver Berry, deceased, out of his own funds. To this answer a general replication was entered, and the parties went to proof. On the first day of April, 1893, the Circuit Court entered a decree in favor of plaintiff, from which the defendants have appealed, and now here assign numerous errors:

First, want of proper parties; that the administrator of the personal estate of Oliver Berry should have been made a party. There were no debts, and no decree was sought against the personal estate, and therefore the administrator was not a necessary party.

As to the wife of A. J. Morris, she appears to have been properly summoned as Mrs. A. J. Morris, and she was before the court in her husband's name, and no objection to this was made in the court below; but the answer is filed for all the defendants, denying the plaintiff's equity, and this Court will not now permit the husband, who was not summoned in the case, to come in here, after a fair hearing, without objection, on the merits, and say that it was his, and not his wife's answer that was filed. Courts of equity will not permit themselves to be trifled with in this way. According to the rule laid down by this Court in the case of *Rader* v. *Neal*, 13 W. Va. 373, the husband was not a necessary party.

It does not affirmatively appear that Isaac Litman was a necessary party, as there is nothing in the case to show that he has any interest in the subject matter of the litigation, and unless the error affirmatively appear the decree will not be reversed.

The next four assignments of error relate to the merits. The proof on the part of the plaintiff clearly establishes the following to be the facts: That in January, 1866, the plaintiff and Oliver Berry, deceased, were married; that shortly prior to their marriage he had bargained for the property in controversy, but had not paid for the same, or obtained the deed therefor; that after the marriage, plaintiff's father, as

an advancement to her, furnished the money to pay for the property, and the deed was then taken in the name of the husband; that from time to time she received other funds from her father's estate, amounting in the aggregate to about eight thousand dollars; that in the years 1887, 1888 and 1889, with her separate funds, she erected a dwelling house on the property, at an expense of from one thousand dollars to one thousand five hundred dollars; that the lot on which this was erected was a small portion of the original property, worth about one hundred dollars, the residue having been sold; that the husband and wife had lived in peace together from the time of their marriage, in January, 1866, up until his death, March 18, 1891, over 25 years; and that he continually recognized the property in controversy to be the property of his wife, and had no estate at the time of his death.

To contradict this state of affairs, the defendants show that Oliver Berry received about one thousand dollars from his father's estate prior to his marriage with plaintiff; that he was a frugal and industrious man, and should have been, and was generally considered, worth a large sum of money, to wit, something like six thousand dollars, at the time of his death; and that he and his wife lived unhappily together, she being overbearing to him, and treating him cruelly.

Defendants' evidence is founded on mere matter of hearsay and supposition, and it seems to me that it clearly appears from this case, taken as a whole, that what little estate Oliver Berry had at the time of his marriage was expended in payments of debts, or used in the support of his family; that the fortune that he was supposed to have was really the money, and the increase thereof, received by his wife from her father's estate; and that, outside of her means thus received, he never was worth anything on his own account. All this he had a right, even prior to the Code of 1868, to recognize and treat as her property, when the same was not used in any manner to defeat the rights of his creditors. The decisions referred to by defendants' counsel in his exhaustive brief, were in cases where the rights of creditors were involved. A very different rule prevails where there is no

such controversy, but it is merely a litigation between the wife and the collateral heirs of the deceased husband. So far as the latter are concerned, the husband has the right to give his wife his property, his time, his labor and skill, and they have no reason to complain. They are only entitled to receive such estate as rightfully belonged to the husband, and was undisposed of at the time of his death. In morals, a wife who has lived with her husband for twenty five years has a far superior right, to collateral heirs, whose right of inheritance is merely a legal provision, through want of direct heirs, and contains within it no moral obligation. It is true, the defendants charge that they did not live happily together. The proof does not sustain this charge, and, if it did, such a fact would have little to do with determining the status of the property in controversy. The husband and wife sometimes did not perfectly agree, but this is not uncommon. On the contrary, it is rather the rule than the exception, because married people generally consider they have a proprietorship in each other; and therefore, if they do sometimes express their differences in language too severe or harsh, it is a matter entirely within and between themselves, and with which the public at large have nothing to do. Affections sometimes must be lacerated, before they will knit together properly and form two souls into one. Such difficulties are always magnified and exaggerated by repetition. The only question here is whether the plaintiff has shown a legal right to the property in controversy. "When a husband buys property with his wife's money, in his own name, there arises a resulting trust in her favor" (14 Am. & Eng. Enc. Law, p. 580, § 17; 1 Perry, Trusts, § 127) unless a different intention on her part is shown; and the burden of proof is on the husband to show she intended a gift to him, which is, however, *prima facie* established by proof of her knowledge and consent" (14 Am. & Eng. Enc. Law, *supra*). The fact that the deed of the lands was made to the husband, in the absence of proof that it was made so by the wife's direction, consent, or knowledge, is no evidence of such gift, and warrants no presumption against the wife's interest. *Wales* v. *Newbould*, 9 Mich. 45. In the case of

*Pusey* v. *Gardner*, 21 W. Va. 470, this Court held that "Courts will not enforce a resulting· trust, after· a great length of time, or laches on the part ·of the supposed *cestui que ·trust.* Lapse of time, when not a statutory bar; operates in equity as evidence of assent, acquiescence,' or waiver. Approved in *Smith* v. *Turlcy*, 32 W. Va. (9 S. E. Rep. 46). Lapse of time, as an equitable bar, only raises a presumption,· which may be rebutted. "Courts will not enforce a resulting trust after a great lapse of time, or laches on the. part of the supposed *cestui que trust*, especially when it appears that the supposed nominal purchaser has ·occupied and enjoyed the estate. But if the trust is admitted, and there has been no adverse holding, lapse of time is no bar; and laches will not be allow· ed to avail as a defense, where fraud has been practiced on the *cestui* to keep her in ignorance of her rights until, just before filing the bill. Any excuse for delay that takes hol·· of the conscience of the chancellor, and makes it inequitable to interpose the bar, is sufficient.". 1 Perry Trusts §. 141. And in the case of *Cranmer* v. *McSwords*, 24 W. Va. 595 (fifth point of syllabus) this Court propounded the law as follows: "While ignorance of law will not prevent the operation of a statute of limitations, the rule is different in equity—a court of conscience. In such court, moral as well as legal grounds may be consdered, and a satisfactory moral excuse may be entertained, although it result from ignorance of law."

A long period of time had elapsed from the·making of the deed until this suit was instituted, to wit, upwards of twenty fiye years—sufficient, ordinarily, to bar a proceeding of this kind. But during all this time the plaintiff and husband oc- cupied the property as their common home; he, as far as the evidence discloses, always admitting, in her presence, her ownership. While, under a fiction· of law, her possession was his, yet he·had no adverse holding to her.; and equity has little regard for mere fictions of law, but always looks at the facts and circumstances as they really exist. Even ac- cording to the evidence of defendants' witnesses, "She was lord of all she surveyed." "There was none her right to dis- pute," in so far as the property in controversy was concern- ed. Even if he did sometimes assert an ownership in the

property in her absence, he never did so in her presence, nor to any witnesses who would be likely to inform her of his claim; and such conduct on his part would only tend to show that he was attempting to deceive her as to the true legal condition of the property, lull her into a state of security, and perpetrate a fraud upon her. A wife's knowledge of law has always been recognized as limited, and therefore a court of equity vigilantly looks after her interests with tender solicitude. It is clearly established, beyond dispute or question, that her money built the dwelling house. Many of the receipts filed show on their face that they were taken by the husband in her name, and he admitted to several witnesses, not only that she built the property, but that it belonged to her. His admissions are proper evidence against, but not in favor of his heirs.

The Counsel insist that the administration account should have been settled, to ascertain whether he had not repaid her for the investments in the property. There is nothing of this kind alleged in the pleadings, and there is no evidence that she ever received one dollar of his estate. On the contrary the evidence tends to show that he was supported and cared for by her out of her separate property— the only source of income for many years prior to his death.

The legal evidence in this case vastly preponderates in favor of plaintiff, and establishes beyond dispute her moral and equitable right to the property in controversy; and therefore the Circuit Court committed no error in compelling a conveyance of the legal title to her by the defendants, and, on their failure, by a commissioner appointed for the purpose.

As to the question of costs, if no defense had been made, or no resistance of the plaintiff's rights undertaken, there might have been some justice in the claim that the defendants should not pay costs. But when parties make a rigid defense, and compel the expenditure of time, money, and the examination of witnesses, to secure their defeat, they ought not to expect to escape the payment of unnecessary costs occasioned by their own conduct. The decree is affirmed.