S. P. HANCOCK v. ISRAEL DAVIS, MARY DAVIS, C. L. ABERNETHY, AND M. LESLIE DAVIS.

(Filed 3 March, 1920.)

1. **Limitation of Actions—Adverse Possession—Husband and Wife—Title —Color—Possession.**

    A wife does not hold possession adversely to her husband while living on his lands with him as such, and therefore cannot acquire title against his by adverse possession under color.

2. **Same—Descent and Distribution—Color.**

    The husband was in possession of the *locus in quo,* without deed, in 1870, listed the lands for taxes in 1871, failed to pay the same, and it appeared of record that his minor son was purchaser at the sale, and after his death in 1891 the former sheriff executed a deed in the name of the son, and conveyance was made in that name to the wife, who continued to live with her husband until 1912, the day of his death intestate,

HANCOCK *v.* DAVIS.

without his having conveyed her the land, but retained possession of it as his own, for a sufficient time to ripen the title in himself: *Held,* the possession of the wife could not be adverse to the husband until his death, and such being for insufficient time thereafter, the land descended to the heir at law, subject to the widow's right of dower.

3. **Appeal and Error—Harmless Error—Evidence—Canceled Mortgages.**

Where the wife claims the lands of her husband after his death by adverse possession under a deed from a third person as color, which, under all of the evidence, is insufficient as to the length of time, the introduction of a canceled mortgage given by her husband and herself, does not bear upon the controversy, and will not be held for reversible error.

CIVIL ACTION, tried before *Kerr, J.,* at October Term, 1919, of CARTERET, brought to recover a lot of land in the town of Beaufort. His Honor charged the jury, if they believed the evidence, to answer the issues in favor of plaintiff. There was a verdict and judgment for plaintiff; defendants appealed.

*J. F. Duncan and D. L. Ward for plaintiff.*
*C. R. Wheatley and Abernethy & Davis for defendants.*

BROWN, J. The evidence shows that John E. Henry entered into possession of the lot in controversy prior to 1870, having no paper title thereto. He remained in possession up to his death in 1912. This action was commenced in 1917.

The lot was listed for taxes by John E. Henry in 1870, and sold for taxes on 7 January, 1871, and bid off in name of W. R. Henry, infant son of John E. Henry and brother of defendant, Mary Davis, who was John E. Henry's daughter. W. H. Henry was born in 1866, and died in 1873, according to the evidence. No deed was made to W. R. Henry at the time of sale, but the then sheriff, John D. Davis, gave a receipt for the taxes in name of W. R. Henry. On 18 April, 1891, John D. Davis, not then being sheriff, executed a tax deed to W. R. Henry for the lot.

The plaintiff offered in evidence a deed to Agnes Henry, dated 30 October, 1891, purporting to be signed by W. R. Henry for the lot, and probated upon the oath of John E. Henry.

On 21 October, 1913, Agnes Henry executed a deed for the lot to plaintiff Hancock. Agnes Henry was the third wife of John E. Henry, and was married in 1887. The defendant, Mary Davis, is the child of John E. Henry by a prior marriage, and, so far as the record discloses, is his only heir at law.

Plaintiff offered mortgage from John E. Henry and Agnes Henry to S. P. Hancock, 17 March, 1906, recorded in Book 5, page 303, which

said mortgage has been canceled and fully satisfied of record, as appears from the face of the same.

The defendants objected to the introduction of this mortgage on the grounds that it was not material, and was prejudicial; objection overruled, and defendants excepted. As the mortgage was duly canceled, we fail to see its bearing on this controversy.

We are of opinion that his Honor erred in refusing the motion to nonsuit, as in any view of the evidence plaintiff failed to make out title to the lot.

John E. Henry was in possession of the lot from prior to 1870 to his death. Assuming that he had acquired title by possession, no one except defendants have shown a title from him. Mary Davis was his only heir at law, and after her father's death, held the property subject to what dower right the widow may have had. The widow held no conveyance from John E. Henry.

The deed signed by W. R. Henry conveyed no title, for he died in 1873, some years before Davis executed the deed. If Agnes Henry had anything, she had only a paper-writing, which might be color of title. Assuming that it was, it never ripened into a good title by adverse possession.

John E. Henry lived on the lot up to date of his death in 1912, and died without either devising or conveying the property to his wife, Agnes. She did not hold adversely after she received the deed purporting to be executed by W. R. Henry. She resided with her husband on the lot, and was there as his wife, and could not hold adversely to him. This subject is discussed in the recent case of *Kornegay v. Price,* 100 S. E. Rep., 883, where it is said:

"It seems to be well settled that, owing to the unity of husband and wife, adverse possession cannot exist between them so long as the coverture continues. But where the marital relations have been terminated by divorce or abandonment, it seems that one may acquire title from the other by adverse possession. 1 A. and E. Ency., p. 820, sec. 11. In *First National Bank v. Guerra,* 61 Cal., 109, it is held that a wife cannot claim adversely to her husband or those claiming under him so long as he remains the head of the family. It is held further, in *Hendricks v. Rasson,* 53 Mich., 575; 19 N. W., 192, that the husband cannot hold adversely to his wife premises belonging to her."

To same effect is 1 Ruling Case Law, p. 755, where more cases are cited. The author says: "It is well settled that neither a husband nor a wife can acquire title, by adverse possession as against the other, of land of which they are in joint occupancy during the continuance of the family relation."

According to the evidence, in any view of it, the title never passed out of John E. Henry until his death. The land then descended to defendant, Mary Davis, his daughter and only heir at law, subject to the widow's right of dower.

The motion to nonsuit is allowed.

Reversed.