R. T. STEALEY, *Admr., etc., et al.*

*v.*

EMMA LYONS *et al.*

(9749)

Submitted January 16, 1946.    Decided March 23, 1946

R. E. *Stealey* and K. C. *Moore,* for appellants.
*Clark, Woodroe & Butts,* for respondents.

HAYMOND, JUDGE:

This suit in equity involves the rights and the interests of claimants to improved real estate in the City of Parkersburg, formerly owned by Mattie E. Woodbridge, who died testate on February 16, 1919. It was instituted February 2, 1942, by R. T. Stealey, Administrator *cum testamento annexo, de bonis non,* of the estate of William D. Woodbridge, deceased, John M. Woodbridge, William Woodbridge Taylor, William Hopkins Wickes, and Edward Wilkinson, against Emma Lyons and H. B. Lyons, in the Circuit Court of Wood County. The plaintiffs, other than the personal representative, are the beneficiaries, and the successor of a beneficiary, under the will of William D. Woodbridge. The defendant, Emma Lyons, is an heir at law of Mattie E. Woodbridge and the grantee in a deed dated June 9, 1941, made by Special Commissioners in an earlier suit to partition the real estate of which Mattie E. Woodbridge died seized, and is one of the claimants of the property in controversy in this suit. The defendant, H. B. Lyons, is the husband of Emma Lyons and purchased the property for

her at the judicial sale made in the partition suit.

The bill of complaint, which was challenged by the defendants by demurrer and amended demurrer, is lengthy and it alleges, in substance, facts which are summarized in the nine immediately following paragraphs of this opinion.

Prior to the year 1887 William M. Evans, grandfather of Mattie E. Woodbridge, was the owner of two lots adjacent to each other in Jackson Addition to the City of Parkersburg, Wood County, West Virginia, designated on a recorded plat as No. 29 and No. 31. By deed dated May 20, 1887, he conveyed one of the lots, described as Lot No. 31, in the belief that the lot described in the deed was Lot No. 29, instead of Lot No. 31, to Mattie E. Woodbridge, who, entertaining a like belief, under the deed took and held adverse possession of Lot No. 29 until she and her husband, William D. Woodbridge, made a deed, by the same description, for the same lot, to Dorr Casto on October 7, 1913. Casto, who was a mere intermediary in the transaction for the purpose of transferring, in accordance with the then existing requirements of law, the title to the real estate from one spouse to the other, by deed executed by him and his wife, dated October 8, 1913, conveyed the same lot, by the same description, to William D. Woodbridge, the husband of Mattie E. Woodbridge. William D. Woodbridge, under the deed from Casto, likewise took and held adverse possession of Lot No. 29, and he and his wife occupied the property until her death in February, 1919, in the belief that Lot No. 29 was the lot described in said deed, instead of Lot No. 31. He continued in possession until his death on January 9, 1939, and by his will he devised to named beneficiaries the property, on which, at the time, were located a two story frame dwelling house and a three story brick apartment. The brick apartment building was numbered 1051 Avery Street and the frame dwelling was numbered 1053 Avery Street. In his will he authorized his personal representative to sell the three story brick building and the lot

known as No. 1051 Avery Street and directed the proceeds derived from such sale to be equally divided among his nephews, the plaintiffs, John M. Woodbridge, William Woodbridge Taylor, and William Hopkins Wickes, and he devised the frame building and the lot known as No. 1053 Avery Street to Vera M. Wilkinson, whose interest was later acquired by her husband, the plaintiff, Edward Wilkinson. The possession of Lot No. 29 of Mattie E. Woodbridge and William D. Woodbridge, respectively, under the above mentioned deeds, was open, peaceable, exclusive, visible, uninterrupted and notorious, under claim of title, at all times until the death of William D. Woodbridge.

After the deed dated May 20, 1887, William M. Evans continued to occupy the other lot, described on the plat as Lot No. 31, but by him, and his successors in the title, as well as the Woodbridges, believed to be Lot No. 29, and remained in possession of Lot No. 31 until his death during the early part of the year 1902. By his will he devised the same lot to his wife, Martha A. Evans, who, after his death, held and possessed it until her death in August, 1903. By her will she devised it to Julia A. Hopkins, who was her daughter and the mother of Mattie E. Woodbridge; and Julia A. Hopkins held and possessed the lot until she conveyed it, by deed dated September 5, 1905, which was not recorded until January 14, 1909, to Mattie E. Woodbridge, who, under the deed, took possession of Lot No. 31 and continued to hold and possess it until her death on February 16, 1919.

Under the will of Mattie E. Woodbridge, which was construed in a suit which came to this Court, entitled *Woodbridge v. Woodbridge*, 88 W.Va. 187, 106 S. E. 437, her husband, William D. Woodbridge, took a life estate in the real estate of which she died seized and possessed, with power of conversion, which power he never exercised, and the remainder was vested in her heirs at law, one of whom is the defendant Emma Lyons. The interests of some of the heirs of Mattie E. Woodbridge, in her real estate, were purchased from them by

the defendants Emma Lyons and H. B. Lyons, many years before the death of William D. Woodbridge, and the defendant H. B. Lyons, and the heirs of Mattie E. Woodbridge, including the defendant Emma Lyons, both before and after the death of Mattie E. Woodbridge in 1919, until some months after his death in 1939, recognized the ownership of William D. Woodbridge in Lot No. 29, which was described in the deeds under which he held possession as Lot. No. 31.

In July, 1939, immediately after the death of William D. Woodbridge, a suit was instituted in the Circuit Court of Wood County by one of the heirs at law of Mattie E. Woodbridge against the Executor of William D. Woodbridge, the other heirs of Mattie E. Woodbridge, and the holders, by deed or assignment, of any interest in her estate, for the purpose of making partition or sale of the real estate of which she died seized. In this suit Emma Lyons and H. B. Lyons were made parties defendant and they appeared and filed their answers. The executor and the beneficiaries under the will of William D. Woodbridge were not parties to such suit for partition.

During the progress of that suit, in July, 1940, it was first discovered by the Executors of William D. Woodbridge and by the defendants Emma Lyons and H. B. Lyons, and by the other parties to the suit, that in the deeds from Evans to Mattie E. Woodbridge, from her and her husband to Casto, and from Casto and his wife to William D. Woodbridge, Lot No. 29, which the Woodbridges had occupied and possessed, was, by mistake, described as Lot. No. 31, and that Lot No. 31, conveyed by Julia A. Hopkins to Mattie E. Woodbridge by deed dated September 5, 1905, and occupied and possessed thereafter by Mattie E. Woodbridge, was, also by mistake, described in the deed as, and believed by the parties thereto to be, Lot No. 29. In the partition suit it was decreed that the interest of Mattie E. Woodbridge at the time of her death, which was not then ascertained and determined by the court, in both Lots No. 29 and

No. 31, be sold; and such undetermined interest was sold and conveyed to the defendant Emma Lyons by Special Commissioners, appointed for the purpose in said suit, for $1,500.00 for the interest in Lot No. 29 and for $100.00 for the interest in Lot No. 31. Some time thereafter the defendants ousted the personal represenative and the tenants of the estate of William D. Woodbridge, who had been and were occupying the buildings on Lot No. 29, and entered and took, and now hold, possession of that property.

The defendant Emma Lyons purchased the interest conveyed to her by the Special Commissioners with full knowledge of the claim and the possession of William D. Woodbridge in and to Lot No. 29, and, for that reason, she is not a purchaser for valuable consideration without notice. She continues in possession of Lot No. 29 and the buildings located thereon and, claiming title under the deed of the Special Commissioners, refuses to surrender possession to the plaintiffs or to recognize their claim to the property.

William D. Woodbridge and Mattie E. Woodbridge were married January 7, 1886, and they continued to live together as husband and wife until her death. No children were born of their marriage. At the time Mattie E. Woodbridge took possession of Lot No. 29, believing it to be Lot No. 31, under the deed to her from William M. Evans of May 20, 1887, there was located on the northern part of the lot a two story frame dwelling, No. 1053 Avery Street, which is still standing and has been occupied almost continuously since that date. Between the years 1890 and 1909, William D. Woodbridge, as a beneficiary of another estate, received moneys in his own right and caused to be constructed on the southern portion of Lot No. 29 a three story brick apartment buliding, No. 1051 Avery Street, which he paid for with his own funds and which still remains on that part of Lot No. 29. When Mattie E. Woodbridge took possession of Lot No. 31, believing it to be Lot No. 29, under the deed from Julia A. Hopkins, dated September 5, 1905, there

was, and still is, on Lot No. 31 a brick veneer dwelling house numbered 1055 Avery Street. This property was referred to by that street number in a codicil which she attempted to make to her will in 1918.

The land on which the two story frame dwelling and the three story brick apartment building are located, was assessed in the name of Mattie E. Woodbridge between 1887 and 1914; and thereafter, until the end of the year 1939, it was assessed in the name of William D. Woodbridge at a total valuation of $6,800.00. The land on which the brick veneer building is located, from 1910 until after the death of Mattie E. Woodbridge in February, 1919, was assessed in her name at a total valuation of $4,300.00.

In its concluding part, the bill alleges that a controversy exists between the plaintiffs and the defendants as to the true ownership of the buildings numbered 1051 and 1053 Avery Street, which are located on Lot No. 29, and of Lot No. 31, and that until such controversy is determined the plaintiff, R. T. Stealey, as the personal representative of William D. Woodbridge, deceased, is unable to discharge his duties as such fiduciary. The prayer is that William D. Woodbridge be declared to be the true owner of the properties numbered 1051 and 1053 Avery Street, being Lot No. 29, as of the time of his death, that the plaintiffs, as his personal representative and devisees, be held to be entitled thereto, and that, if necessary for the purpose, the deeds from Mattie E. Woodbridge and William D. Woodbridge to Dorr Casto, and from Dorr Casto and wife to William D. Woodbridge, be reformed to effectuate the true intention of the parties to those deeds, and for general relief.

On March 5, 1942, a receiver was appointed in this suit to take charge of the real estate, the ownership of which is in controversy, and on April 2, 1942, the defendants, who previously had filed a demurrer which does not appear to have been acted upon by the court, filed their amended joint demurrer to the bill of complaint which, on April 3, 1944, was sustained, and the

court, on its own motion, certified its rulings to this Court. By order entered of record on July 28, 1944, this Court refused to docket the certificate.

On November 10, 1944, at the first regular term of the Circuit Court of Wood County, following the refusal of this Court to review the questions certified, the plaintiffs moved the court to remand the cause to rules to enable them to file an amended bill of complaint. By decree entered April 4, 1945, the Court refused to remand the cause for the reason that the bill of complaint was not susceptible of amendment and dismissed the bill. The decree, however, further provided that the Special Receiver make report of his receipts and disbursements within thirty days, that the defendant Emma Lyons is the owner of the fee simple title to Lot No. 29, free of all claims of the plaintiffs, that the costs, including those thereafter accruing in connection with the receivership, be paid by the plaintiffs, and that the cause be retained upon the docket for further proceedings necessary to terminate the receivership. Upon the petition of the plaintiffs an appeal from this decree was granted by this Court.

The plaintiffs, in moving the Circuit Court to remand the cause to rules to enable them to file an amended bill, informed the court that they desired to amend the bill, but they did not tender any amended bill of complaint or apprise the court of the character or the form of the amendment; and nothing to indicate the nature of the proposed amendment appears in the record.

The plaintiffs, in substance, assign as error the action of the trial court: (1) In sustaining the amended demurrer to the bill of complaint; (2) in refusing to remand the case to rules to enable the plaintiffs to file an amended bill of complaint; (3) in holding that the bill of complaint was not susceptible of amendment; (4) in dismissing the bill of complaint; and (5) in decreeing the defendant Emma Lyons to be the fee simple owner of Lot No. 29 and in awarding costs against the plaintiffs.

694

In this jurisdiction a long standing and well settled rule of practice of both courts of law and equity is to allow great liberality in permitting amendments to pleadings; and the authority to do so exists independently of statute. *National Bank v. Lynch*, 69 W. Va. 333, 71 S. E. 389; *Travis v. Peabody Insurance Co.*, 28 W. Va. 583. That authority may be exercised whenever justice will be promoted. *Staats v. Insurance Co.*, 57 W. Va. 571, 50 S. E. 815. Code, 56-4-26, deals in general with the right of amendment, makes liberal provision for the allowance of amendments to declarations and bills, and leaves it largely in the discretion of the court as to the terms upon which an amendment may be made. That section, in part, provides that the plaintiff may of right amend his declaration or bill at any time before the appearance of the defendant and that, notwithstanding such appearance, in any action, suit, motion or other proceeding, the court, if in its opinion substantial justice shall be promoted thereby, may at any time before final judgment, and upon such terms as it may deem just, permit any pleading to be amended, or material supplemental matter to be set forth in amended or supplemental pleadings, to the extent of introducing a necessary party, discontinuing as to a party, eliminating from a multifarious bill all but one of the equitable causes of action alleged, or changing the form but not the cause of action. Another section of the statute, Code, 56-4-26, relating to amendment after demurrer has been sustained, provides that the plaintiff, upon giving notice to the defendant or the defendants who have appeared, or to their counsel, may file an amended declaration or bill at any time within the term at which the demurrer was sustained; that thereupon the cause shall proceed as if such amended pleading had been filed at the time the original declaration or bill was filed, but the court shall allow the defendant a reasonable time to plead to or answer such amended declaration or bill; and that the plaintiff may, if he so elect, have the cause remanded to rules for amendment.

It is pertinent to emphasize, however, that notwithstanding the liberality of the practice and the wide latitude for amendment provided by the statute, the right to amend lies in the discretion of the court. This discertion is not an absolute, but a sound, discretion, which is subject to appellate review. *Webster v. Hurvitz,* 116 W. Va. 328, 180 S. E. 265. An amendment, however, may not change the cause of action. *Edgell v. Smith,* 50 W. Va. 349, 40 S. E. 402; *Snyder v. Harper,* 24 W. Va. 206; Code, 56-4-24. See also *Morrison v. Judy,* 123 W. Va. 200, 13 S. E. 2d 751, and cases cited. Unless it appears that the court has committed error in the exercise of its discretion a decree denying the right to file an amended pleading will not be reversed. *Bill v. Schilling,* 39 W. Va. 108, 19 S. E. 514; *Western M. & M. Co. v. Virginia Cannel Coal Co.,* 10 W. Va. 250. It is also the settled law in this jurisdiction that if it appears from the record that the pleading is not susceptible of amendment, or if it does not appear that an amendment can be made to cure the case of the plaintiff, the court will not permit the filing of an amended pleading and its refusal to allow an amendment in such circumstances does not amount to an abuse of discretion. *Pickens v. Knisely,* 36 W. Va. 794, 15 S. E. 997; *Rexroad, Admr. v. Wells,* 13 W. Va. 812; *Surber v. McClintic,* 10 W. Va. 236. It is also well established that amendments will not be allowed which are inconsistent with the nature of the pleadings or change the cause of action. *Kuhn v. Brownfield,* 34 W. Va. 252, 12 S. E. 519. And when a bill of complaint, to which a demurrer has been sustained, discloses that it can not be cured by amendment, the case should be dismissed. *Chambers v. Pierce,* 94 W. Va. 766, 120 S. E. 912; *Buford v. Chichester,* 69 W. Va. 213, 71 S. E. 120.

In view of the foregoing principles governing the courts of this State in permitting or refusing amendments to pleadings, it becomes necessary, in their correct application to this case, to determine whether the

bill of complaint alleges grounds of equitable relief, and if not, whether it appears that it can be cured by amendment, without changing the cause of action, to present a case entitling the plaintiffs to relief in a court of equity.

Though this Court has heretofore refused to docket the case when certified upon the rulings of the trial court in sustaining the amended demurrer to the bill of complaint, such action does not foreclose consideration of the questions here raised as to the sufficiency of the bill upon the amended demurrer. No decision by this Court on the merits of the questions so arising has been rendered, and the sufficiency of the bill upon the amended demurrer is now before this Court for determination upon this appeal.

The plaintiffs, under the allegations of the bill, rely, in the first instance, upon the claim that by the adverse possession of William D. Woodbridge, which continued without interruption from October 8, 1913, the date of the deed to him from Casto and wife, until his death in 1939, a period of nearly twenty-six years, he acquired title to Lot No. 29 against the title of Mattie E. Woodbridge, his wife, under the deed from Julia A. Hopkins to her, dated September 5, 1905, and her heirs; and secondly, if necessary to perfect the title of William D. Woodbridge, so acquired, they seek reformation, because of mutual mistake of all the parties thereto, of the deeds from Mattie E. Woodbridge and husband to Dorr Casto, dated October 7, 1913, and from Dorr Casto and wife to William D. Woodbridge. Accordingly, these questions arise: (1) Is the possession, by the husband, of real estate owned by the wife adverse to the wife during coverture; and (2) may reformation be decreed of a deed of a married woman of her separate estate in land, under the law of this State as it existed on October 7, 1913, the date of the deed from Mattie E. Woodbridge and husband to Casto?

Many cases hold that when land is occupied and used

jointly by husband and wife, during coverture, neither spouse can hold adversely to the other and thereby acquire title to the premises so occupied. *Smith v. Cross,* 125 Tenn. 159, 140 S. W. 1060; *Hinton v. Farmer,* 148 Ala. 211, 42 So. 563; *Springer v. Young,* 14 Ore. 280, 12 P. 400; *Bader v. Dyer,* 106 Iowa 715, 77 N. W. 469; *Hancock v. Davis,* 179 N. C. 282, 102 S. E. 269; *Smith v. Hughes,* 292 Ky. 723, 167 S. W. 2d 847; *Howard v. Turner,* 287 Ky. 206, 152 S. W. 2d 589. The same rule is stated by recognized text writers. 1 Schouler on Marriage, Divorce, Separation and Domestic Relations, 6th Ed., Section 208; 4 Tiffany on Real Property, 3d Ed., Section 1190; see 1 Am. Jur., Adverse Possession, Section 84; 41 C. J. S., Husband and Wife, Section 42, Subparagraph C; 74 A. L. R. 135, Note at Page 141.

It can not be definitely determined, from the allegations of the bill, whether William D. Woodbridge and Mattie E. Woodbridge, during the period May 20, 1887, to October 8, 1913, or the period October 8, 1913, until her death in February, 1919, while they were living together as husband and wife, actually lived in any part of the premises here in controversy. Whether they did or did not live in the premises, if William D. Woodbridge, the husband, had the use or the possession of Lot No. 29 during that time, his possession was neither exclusive nor hostile so as to divest the title of his wife in the property by adverse possession. Though no case involving this exact point has been decided by this Court, the case of *Berry v. Wiedman,* 40 W. Va. 36, 20 S. E. 817, intimates that, during coverture, the possession of real estate by one spouse is not adverse to the other. In the case of *Kelley v. Kelley,* 51 R. I. 173, 153 A. 314, 74 A. L. R. 135, the Supreme Court of Rhode Island uses this language: "The occupancy of the husband is not adverse to the title of the wife and is not, however long continued, a basis for acquiring a title by possession." That one spouse can not acquire title of land from the other by adverse possession, during coverture, is sustained by well reasoned cases in numerous other

jurisdictions. *Hendricks v. Rasson,* 53 Mich. 575, 19 N. W. 192; *McCallister v. McCallister,* 342 Ill. 231, 173 N. E. 745; *Kornegay v. Price,* 178 N. C. 441, 100 S. E. 883. The rule, as laid down by the above cited cases, is sound in principle and declares the doctrine of the common law. Though the common law disabilities of married women have been greatly relaxed by recent statutes in this jurisdiction, no statute of this State has abolished the identity in law of husband and wife which exists at common law. By reason of this legally recognized identity, it would be unreasonable to conclude that either spouse could hold the land of the other exclusively and in a hostile manner. While the relation of husband and wife exists, it should not be legally possible to divest or transfer title to land from one to the other by adverse possession. It is true that modern statutory enactments enable one spouse to sue the other for a money demand, but these and other similar provisions do not permit the hostile or exclusive possession of land, for the period fixed by the statute in ordinary cases, to operate to transfer the title of the one to the other. If such were permitted by law, the inevitable result, during coverture, would be disagreement and domestic discord, which tend to separation and eventual termination of the marriage relation. It is also contrary to sound public policy to permit a husband or a wife to take possession of the land of the other and acquire title to it by adverse possession at the end of the statutory period ordinarily required to transfer title by that method. The conclusion that while the relation of husband and wife exists possession of land by one can not be adverse to the other and does not operate to transfer title from either spouse to the other is sound in principle and is supported by ample judicial authority.

The possession of William D. Woodbridge, after the death of his wife, Mattie E. Woodbridge, in February, 1919, of the real estate designated as Lot No. 29, was that of a life tenant under her will, by which, as construed by this Court in the case of *Woodbridge v. Wood-*

*bridge,* 88 W. Va. 187, 106 S. E. 437, he was given an estate for life in all of her real estate. The possession of land by a life tenant is not adverse to those entitled in remainder; and as to rights in land of a remainderman, there can be no ouster or running of the statute of limitations until the termination of the life estate. *Lynch v. Brookover,* 72 W. Va. 211, 77 S. E. 983. It is clear that the allegations of the bill of complaint are insufficient to show title in William D. Woodbridge by adverse possession, and that it is deficient in that respect.

The allegations of the bill are likewise insufficient to entitle the plaintiffs to reformation, because of mutual mistake of fact, of the deed from Mattie E. Woodbridge and William D. Woodbridge, her husband, to Dorr Casto, dated October 7, 1913, which is the foundation of the claim of the plaintiffs that title to Lot No. 29 was held by William D. Woodbridge under that deed and the subsequent deed from Casto and wife to him. Though legislation subsequently enacted has altered the law with respect to the effect of a deed and other contracts of married women, the law as it existed at the date of the deed from Mattie E. Woodbridge and husband to Dorr Casto, and which governs the decision of this case, did not permit reformation, in equity, of the deed of a married woman. This Court expressly so held in the case of *Wiseman v. Crislip,* 72 W. Va. 340, 78 S. E. 107. Though the facts in that case are somewhat complicated, and the question of the sufficiency of the description in the deeds, then under consideration by the Court, entered into the decision, this Court held, in syllabus 2, that, in the absence of statutory enlargement of the common law powers of married women respecting dispositions of their real estate, equity will not reform the deed of a married woman so as to make it include land it should have embraced but, by reason of mistake, did not. Though this holding was criticised in the concurring opinion of Judge Williams, the majority opinion, in discussing the deed of a married woman, sought to be reformed, contains this language:

"Nor, if it is deemed to have been intended to convey her land, but not to have done so because of a mistake, can reformation thereof be had against her, unless the recent Married Woman's statute has altered her status in this respect. 'Although the courts have entertained different views as to whether or not a suit to reform will lie as against a married woman, it is now pretty well settled that, in the absence of power conferred by statute putting a married woman on an equal with *feme soles* as respects property or capacity to contract, a mistake in a written instrument will not be reformed as against them.' 34 Cyc. 959. This text is sustained by *Martin v. Gargandine,* 46 Ill. 322; *Hutchings v. Huggins,* 59 Ill. 29; *Building Ass'n v. Scanlan,* 144 Ind. 11; *Shroyer v. Nickell,* 55 Mo. 264; *Bank v. Schmidt,* 6 Mont. 609; *Carr v. Williams,* 10 Ohio 305; *Purcell v. Goshorn,* 17 Ohio 105; *Petesch v. Hambach,* 48 Wis. 443; *Conrad v. Schwamb,* 53 Wis. 372; *O'Malley v. Ruddy,* 79 Wis. 147. See 42 Cent. Dig., sec. 114. The Married Woman's statute in this state has not changed a married woman's status in respect to capacity to convey her real estate. Some of the decisions already cited were rendered after the passage of that act. She cannot convey except in the manner prescribed by statute nor can she bind herself to convey except by a contract executed and acknowledged in the statutory form prescribed for her acknowledgement of deeds. By an express provision of section 3 of chapter 66 of the Code, as amended by chapter 109 of the Acts of 1891 and chapter 3 of the Acts of 1893, her power of disposal over her real estate is thus limited. Nothing in said chapter as amended by the recent acts, here referred to, manifests any intent to enlarge her powers respecting her real estate. She may make contracts, binding her estate, but the provision relating to her power of disposal of her separate real estate is the same as it was in the act of 1866. The present statute makes a judgment at law against her a lien on her land, and thus varies and extends remedies against her, but this does not put her on an equal footing with *femes sole* as to her lands. Formerly it was necessary to proceed in equity to charge her separate estate with her debt, but she could contract debts for which her separate estate was liable to be so charged. *Radford v. Carwile,* 13 W. Va. 572. Such variation and extension of the remedy do not

enlarge her contractual powers. This section of the statute must be read in connection with the provision of section 3 to which reference has been made and in subordination thereto. This conclusion harmonizes with views expressed and principles stated in *James v. Kellar*, 63 W. Va. 139, 142, a case involving the construction in general of the Married Women's Statute."

That decision, which is in accord with the weight of authority in jurisdictions in which the common law and statutory status of married women was substantially similar to her status under the law of this State as it existed at the time of the decision and at the date of the deed from Mattie E. Woodbridge and husband to Dorr Casto, on October 7, 1913, settles the law in this State on that point; and it is adhered to and applied to the facts in this case. The bill of complaint is therefore defective, in so far as it undertakes to set up a valid claim for reformation of the deed under which William D. Woodbridge undertook to hold title to Lot No. 29.

As above stated, the plaintiffs did not tender for filing any amended bill of complaint when they made their motion to remand the case to rules to enable them to file an amended bill of complaint. Nor did they inform the court, in any manner disclosed by the record, of the character of the proposed amendment. Consequently there is nothing in the record by which this Court may be informed of the nature of the amended bill of complaint which the plaintiffs desire to file upon any remand of the case to rules. The only information on that point is the statement in the brief of counsel for the plaintiffs to the effect that after the case had been fully developed upon demurrer, and certified to this Court and returned, it became apparent to counsel for the plaintiffs that certain facts of the marital relation of William D. Woodbridge and Mattie E. Woodbridge, particularly with respect to the manner in which they handled and dealt with their separate properties, might be decisive with respect to the application of the doctrine of adverse possession as to the commencement of the period of the

limitation for entry under the statute, and the further statement that it seemed desirable that the heirs at law of William D. Woodbridge should be made parties to the bill. These expressions are wholly insufficient to indicate the manner in which the case, as stated in the bill of complaint, could be improved or the insufficiency of the bill in setting up a valid cause of action in equity could be cured. Accordingly it is clear, from the nature of the case, that the bill of complaint can not be cured by amendment without changing the particular cause of action which it unsuccessfully undertakes to state.

The action of the trial court, in sustaining the remurrer to the bill of complaint, was correct; and, as there is nothing in the record to show that the defects in the bill can be cured by amendment and it is clear that they are not curable by any type of amendment which would preserve the same cause of action, the court was fully justified in refusing to remand the case to rules for the purpose of permitting the plaintiffs to file an amended bill of complaint.

Since the two grounds set out and relied on in the bill of complaint are insufficient, singly or together, to entitle the plaintiffs to equitable relief, it is unnecessary to discuss their contention, under the third point in their brief, that the descriptions of the property contained in the deeds from Mattie E. Woodbridge and husband to Casto, and from Casto and wife to William D. Woodbridge, are ambiguous and incomplete, and should be given the same interpretation as that accorded them by the parties to such deeds, further than to say that there is no ambiguity or lack of completeness in such descriptions.

The trial court, however, after dismissing the bill, did commit error in requiring the Special Receiver to make report of his receipts and disbursements within the time specified in the decree, in decreeing that the defendant Emma Lyons is the owner of the fee simple title to Lot No. 29, and in retaining the cause upon the docket for further proceedings necessary to the termination of the receivership. After the court denied the

motion of the plaintiffs to remand the cause of rules for the purpose of amendment, and dismissed the bill, the case was ended, and the court could do nothing further in the case except to award costs and enter an order of dismissal. *Chambers v. Pierce,* 94 W. Va. 766, 102 S. E. 912. 1 Barton, Chancery Practice, 3d Ed., 333.

The judgment of the Circuit Court, in so far as it dismisses the bill of complaint of the plaintiffs and adjudges the defendant Emma Lyons to be the fee simple owner of Lot No. 29, is reversed; but in so far as it denies the motion of the plaintiffs to remand the case to rules to enable them to file an amended bill of complaint and awards costs against the plaintiffs, the judgment is affirmed. And this cause is remanded to the Circuit Court of Wood County with directions to reinstate the bill of complaint for the purpose of requiring the Special Receiver to make prompt settlement of his accounts, and, when such settlement is made and the receivership is terminated, to dismiss the suit.

*Affirmed in part; reversed in part; and remanded with directions.*