# CHARLESTON.

## LYNCH v. BROOKOVER *et al.*

Submitted June 14, 1911.   Decided March 18, 1913.

1. FRAUDS, STATUTE OF—*Parol Conveyance of Land—Validity.*
   . Title to land can not be devested by mere parol agreement or disclaimer.   (p. 215).

2. DEEDS—*Acceptance—Documentary Evidence.*
   Documentary evidence establishing the acceptance of an ancient deed by a deceased grantee, such as his recognition of the deed in a bond executed by him, his assertion of title under the deed by answer in a suit, and his conveyance of the land referring to the deed as a source of title, will prevail over proof of indefinite parol declarations by the grantee that he did not accept the deed.   (p. 216).

3. LIMITATION OF ACTIONS—*Commencement of Limitation Period—Right of Entry.*
   As to rights in land there can be no ouster or the running of the statute of limitations against one until he has right of entry.   (p. 218).

4.  LIFE ESTATES—*Possession of Life Tenant—Remainderman.*
     The possession of the life-tenant or of those claiming under
     him is not adverse to those entitled in remainder.  (p. 219).

5.  ESTOPPEL—*Claim Under Deed—Effect.*
     Where one has accepted and held under a deed for land, he
     can not afterwards simply ignore the deed and seek to rely on
     a holding of the land under a prior executory contract.  (p. 219).

Appeal from Circuit Court, Monongalia County.

Suit by Dorcas A. Lynch against George Brookover and others for partition and to remove clouds on plaintiff's title.  From a decree dismissing plaintiff's bill, she appeals.

*Reversed and Remanded.*

*W. W. Brannon* and *Meredith & Prichard,* for appellant.

*Moreland & Moreland,* for appellees.

ROBINSON, JUDGE:

The object of this suit is to cause a partition of lands in which plaintiff Dorcas A. Lynch claims an undivided one-fourth interest, and to cancel and remove as clouds on plaintiff's title to the land certain conveyances relating thereto.  The circuit court denied relief to plaintiff and dismissed her bill.

On June 2, 1857, George P. Wilson and wife made a deed of general warranty to their son-in-law and daughter, Asbury Brookover and Dorcas, his wife, for the natural life of the said Dorcas, and after her death to her children, conveying a tract of about 102 acres in Monongalia county, in consideration, as the deed recited, that Asbury Brookover had on that day entered into a bond with security to maintain and support the grantors in a proper and comfortable manner during the remainder of their lives and also to pay to the other children of the grantors fifty dollars each.  The bond referred to in the deed was executed by Asbury Brookover, with another as his surety, on the same date as that of the deed.

At the time of the conveyance, Dorcas Brookover had four children living, namely: George Brookover, defendant in this suit; Stephen Brookover, father of plaintiff Dorcas A. Lynch; Rebecca J. Brookover; and Nancy E. Brookover.  The two last

named died in infancy on December 16, 1862, unmarried and without issue. Dorcas Brookover never after had other children. Stephen Brookover, the father of plaintiff Dorcas A. Lynch, died on January 2, 1864, leaving her an infant four months old, as his only heir at law.

In 1858, Levi Haught, a creditor of George P. Wilson, brought a suit in chancery attacking the deed made by Wilson and wife to Asbury Brookover and Dorcas, his wife, for the life of the latter and then to her children, as being in fraud of the rights of Haught as a creditor, and as made for the purpose of hindering and avoiding the payment of the debt due him. To that suit all the grantees in the deed, as well as others, were made parties. The answers of Wilson and Asbury Brookover to Haught's bill, filed at the Spring Term 1860, denied any fraud or combination in the making of the deed. Wilson averred that the deed was made in good faith solely to provide for himself and wife, and in support of his answer he filed therewith the original of the bond to which we have referred. Asbury Brookover answered that the deed was made "in conformity to an arrangement made some four years ago with said Wilson" and that on the 2nd day of June, 1857, this arrangement was carried out by Wilson and wife conveying to respondent the tract of 102 acres of land and respondent executing a bond binding himself to support the grantors and to pay fifty dollars to each of the other children of the grantors. By these and other allegations in the answer of Asbury Brookover, it clearly appears that he relied on the deed of June 2, 1857, claimed thereunder, and defended the same against the attack of Haught.

The Haught suit was delayed by the Civil War, though in 1863 it was referred to a commissioner "by consent of the parties," and in 1864 the order of reference was executed and a report filed. Thereafter no orders or decrees were entered in the cause until November, 1865, when on motion of Haught, the plaintiff, it was dismissed.

On September 20, 1865, Asbury Brookover and wife made a deed to George P. Wilson, with covenants of general warranty, for the 102 acres, therein referring to the land as "being the same land conveyed to the said grantors by George P. Wilson by deed of record." Here it seems was an attempt to put the

title back in Wilson, though the interests of the remaindermen created by the deed of June 2, 1857, were entirely overlooked and ignored. At this time Stephen Brookover, one of those remaindermen, was dead, and his estate in remainder had vested by descent in plaintiff Dorcas A. Lynch, then an infant. George Brookover, another of those entitled in remainder, was living, but was under the age of 21 years. The interests in remainder of the other two, Rebecca and Nancy, had, at their deaths on December 16, 1862, descended to their father Asbury Brookover. It is well to observe that this deed of September 20, 1865, did not revest title in Wilson to the interest in remainder belonging to plaintiff Dorcas A. Lynch in the right of her deceased father.

On the next day after the making of this deed of September 20, 1865, George P. Wilson and wife made a deed of general warranty to James S. Walker for 52 acres of the 102 acre tract, in consideration of thirteen hundred dollars, which Walker paid to Haught on the debt sought by the latter as against Wilson in the suit to which we have referred. It was this payment by Walker and an additional payment by Asbury Brookover in satisfaction of the Haught debt that brought about the dismissal of the Haught suit. And, on September 23, 1865, Wilson and wife, in consideration that they be supported and maintained during their lives by Asbury Brookover, made a deed of general warranty to him for 50 acres, the residue of the original tract.

Ever since the date of the deed to Walker, he has been in possession of the 52 acres, claiming it in fee, improving it as his own, and making conveyances of the coal and other rights thereunto appertaining. And from the date of the deed to Asbury Brookover, he was in possession of the 50 acres as though owning it in fee, purporting to convey coal and other rights in relation thereto, until his death on April 1, 1904. He left a will divising the 50 acres to his son George Brookover, who we have seen was given a remainder by the deed of June 2, 1857, and to Norman Brookover, the son of George.

Dorcas Brookover, for whose life the life tenancy by the deed of June 2, 1857, was created, died August 27, 1905. Soon after her death, plaintiff Dorcas A. Lynch claimed the right of entry that came to her by the determination of the tenancy for the

life of Dorcas Brookover, and brought this suit to assert her right to a one-fourth interest in the land.

That the deed of June 2, 1857, vested in Stephen Brookover, the ancestor of plaintiff Dorcas A. Lynch, an estate in remainder for an undivided one-fourth interest in the 102 acres is clear. That right of entry would come to her in the right of her deceased father at the death of Dorcas Brookover is equally clear. Therefore, if the deed of June 2, 1857, is to be considered at all effective, it does not require discussion or the exposition of legal principles to prove that plaintiff's suit is well grounded.

Defendants Walker and the devisees of Asbury Brookover, in their answers, proofs, and arguments on the one hand assert that the deed which gave the remainder to Stephen Brookover was annulled and considered for naught by the parties thereto; that Stephen Brookover before his death, being of age, consented that the land might go by the deeds of Wilson and wife made in September, 1865, to Walker for money with which to pay the Haught debt, and to Asbury Brookover for support of the old people, the Wilsons; while on the other hand defendants maintain that the deed of June 2, 1857, was never accepted by Asbury and Dorcas Brookover on behalf of themselves and their children to whom it was made, 'so that title never went out of Wilson by it. Latterly in the cause, defendants seek to rely on an executory contract made by George P. Wilson to Asbury Brookover and William H. Wilson, jointly, in May, 1856, contracting to them all the lands that George P. Wilson then owned in consideration of the support of himself and wife for life and the payment of fifty dollars each to certain of his children.

When title to land once vests by a deed it can not be revested in the grantors by the parties merely considering the deed for naught. This proposition is too well known to demand discussion. The deed vesting a remainder in Stephen Brookover could not be annulled in that way. The claim that Stephen Brookover parted with title by verbal consent is equally untenable. If Stephen Brookover, before his death in 1864, did verbally consent to an arrangement whereby Walker and Asbury Brookover were to take over the 102 acres by such deeds as were made to them in September 1865, so that money might be raised

to pay the Haught debt and provision be made for the support and maintenance of the old people, his verbal consent could not divest him of the title which he held by the deed of June 2, 1857. "Vested title cannot be devested by mere verbal disclaimer." *Clark* v. *Beard,* 69 W. Va. 313. There is, however, no convincing proof in the case that Stephen Brookover ever even verbally consented to part with his title.

The evidence in this cause does not by any means show that the deed of June 2, 1857, was not accepted. Indeed the proof conclusively shows that it was accepted by Asbury and Dorcas Brookover on behalf of themselves and their children, grantees therein. The deed was recorded on the 5th day of June, 1857. It is not shown to have been recorded without delivery to and acceptance by the grantees. Naturally it would have been filed by them for record. Must it not be presumed that it was, since nothing to the contrary is shown? Of course delivery alone is not necessarily an acceptance. But the case before us goes further. It is proved by the official marginal notes on the deed book at the page where the deed of June 2, 1857, was recorded, that the deed was returned to the "grantee" by the recording officer on April 9, 1858. Must it not in reason be presumed that this "grantee" was Asbury Brookover, acting for himself and the other grantees in the deed? He took the deed from the office, as is customary. Such act surely expresses acceptance where the contrary is not shown. Moreover, in the early part of 1860, he recognized and relied on this deed in his answer in the Haught suit. He claimed under it there unequivocally. He stood on it as a valid, binding deed, in resistance to Haught's effort to set it aside. Again, in the deed by which he and his wife reconveyed to Wilson on September 20, 1865, they referred to the deed of June 2, 1857, as the source of the title they were reconveying. It does not appear that Wilson had ever theretofore made any other deed to them to which the reference could have had relation. It seems certain that the parties to the deed of June 2, 1857, gave it credence as a binding, delivered, and accepted instrument. Stronger evidence of the acceptance of the deed, right at the time of its execution, lies in the fact that Asbury Brookover executed the bond which was itself the consideration of the deed. That this

bond was executed and delivered to Wilson is beyond peradventure. He filed it with his answer in the Haught suit, relying upon it and the deed made in connection therewith, as executed and accepted binding contracts. The bond recites the existence of the deed. Would Brookover have signed the bond if the deed had not been accepted?

It is said that Asbury and Dorcas Brookover never took possession as life-tenants under the deed of June 2, 1857. How can this rightly be said when, at the time of the execution of the deed, they were on the land with Wilson and wife and ever after remained there? Were Brookover and wife not in possession under the deed after it was accepted? Most certainly it has not been shown that they did not remain on the land by virtue of the deed.

It is further argued that Asbury Brookover and wife evidently understood the deed of June 2, 1857, to give them an estate in fee simple, and that Asbury Brookover so understand it when he filed his answer in the Haught suit. How does this appear? It is not proved so as to overcome the plain significance of that deed. Besides, it is plainly shown that Asbury Brookover knew at the time of the execution of the deed that it vested only a life estate in him and his wife. The bond which he signed and sealed in connection with that deed so recites. Can we at this late date say that he unwittingly accepted the deed, believing that it gave no estate in remainder, when he recites in the bond knowledge that it did? There is absolutely no proof in the case, that Asbury and Dorcas Brookover unwittingly accepted the deed giving an estate in remainder to their children, or that they would not have accepted it if they had known that the deed had the effect that it has on its face. On the other hand, it appears that they did accept it, and did know or were bound to know that it gave them only an estate for life with remainder to their children. They were parties to the Haught suit. In that suit the character and effect of the deed was fully and correctly pleaded by the plaintiff therein. If they did not know the meaning of the deed before they were brought into the Haught suit, they were then put on notice of the interests in remainder. Nevertheless Asbury Brookover sought to rely on the deed vesting those interests as a defense to the Haught

suit. Certain it is that neither Asbury nor Dorcas Brookover, when the Haught suit in which they were summoned told them the character and effect of the deed, renounced the deed, but long afterwards relied on it as their source of title in reconveying to Wilson, as we have shown.

All these facts and circumstances binding Asbury and Dorcas Brookover to a full knowledge, recognition and acceptance of the deed can not be overcome by testimony of indefinite declarations on the part of Asbury Brookover, purporting to have been made years ago, about the time that he and his wife were reconveying back to Wilson, to the effect that he had not accepted the deed, or proof of declarations by Dorcas in her old days that she had no interest in the land. Whatever they may have said can not overcome the force of the deed of June 2, 1857, and the facts and circumstances which are disclosed in relation to their recognition and acceptance thereof. Title having vested by the making, delivery, and acceptance of that deed, they could not disclaim the title by a change of mind inconsistent with that making, delivery, and acceptance. Nor could they disclaim title by parol declarations to the effect virtually that they did not consider their acts binding as an acceptance of the deed and a reliance on it. They could not revest title in Wilson by simply ignoring the deed under which they held from 1857 to 1865. They seemed to understand that they could not, for they made a deed back to him, referring to the fact that they held the land by reason of the deed of June 2, 1857.

From what we have noticed, it appears to be undeniably proved that Asbury and Dorcas Brookover accepted the deed, so that it vested title in them for the life of Dorcas with remainder to their children. What they did in relation to the deed charges them with its acceptance. "There may be an acceptance by the retention of the deed by the grantee; by an assertion of title by him; by his conveyance of the property; by acts of ownership generally in respect to the property; or by bringing a suit on the deed." 13 Cyc. 571.

The doctrine of ouster and of the statute of limitations relied on by defendants can not apply. Though, at the time of the reconveyance by Asbury and Dorcas Brookover to Wilson, Asbury, by the death of the two children who were vested in re-

mainder, had become a co-tenant in remainder with plaintiff Dorcas A. Lynch, and though the deed in reconveyance purported to convey in fee simple, this could not operate as an ouster of plaintiff, for she had no right of entry until the ending of the life estate by the death of Dorcas Brookover in August, 1905. The statute could not run against her until that time. She brought her suit for entry by a partition soon thereafter. We need not elaborate on principles applicable here. *Cecil* v. *Clark,* 44 W. Va. 659, and other cases. Furthermore, Asbury Brookover, by the death of the two children, was only a co-tenant with plaintiff in remainder. All on this score that the deed re-conveying to Wilson carried from Asbury Brookover was a right of entry as a co-tenant in fee simple at the death of Dorcas, for whose life the life tenancy prevailed. So Wilson, when he conveyed in September, 1865, to Walker and Asbury Brookover, conveyed only that which he had gotten back by the deed from Asbury and Dorcas Brookover to him—a life estate in Asbury and Dorcas for the life of the latter, with right of entry when the life estate ended by plaintiff Dorcas A. Lynch in the right of her father, Stephen Brookover, by George Brookover in his own right, and by Asbury Brookover in the right of his two deceased children.

Plaintiff, Dorcas A. Lynch, now that the estate for the life of Dorcas Brookover has ended, is an owner of an undivided one-fourth interest in the land granted by the deed of June 2, 1857. Until the death of Dorcas Brookover, James S. Walker and Asbury Brookover were in fact only holding estates for her life, subject to the entry of those entitled in remainder at her death. The possession of Walker and of Asbury Brookover for so long a time, therefore, can not be considered inconsistent or adverse to the rights of the remaindermen. That possession and the payment of taxes by them has been entirely consistent with and conformable to plaintiff's rights, as one entitled in remainder. "The possession of the life-tenant, and of those claiming under him or subject to his control, is not adverse to those entitled in remainder." *Austin* v. *Brown,* 37 W. Va. 634.

All that which is submitted in relation to Asbury Brookover having held until the deeds of September, 1865, under the executory contract of May 16, 1856, is completely answered by the de-

cisive proof that he was holding and claiming during those years under the deed of June 2, 1857. A valid reason against a claim under this executory contract, if it were not shown that it was superseded in any event by the last named deed, is that there is no evidence of a delivery of the contract to Asbury Brookover and William H. Wilson, to whom it was made. The evidence is against the fact of such delivery. It was found among the papers of George P. Wilson, the maker of the contract, as though it had never been delivered or put into use. If Asbury Brookover was professing to hold under this executory contract from 1856 to 1865, why did he not rely on it when he answered the Haught suit within the interim between those years instead of relying on the deed of June 2, 1857? If he was holding under it, why did he, in 1857, sign the bond for support and maintenance which recognized that he had taken a deed from Wilson that gave him and his wife only a life estate with remainder to their children?

Since right of entry has come to plaintiff, and she has sued before that right of entry has become barred, she may have the partition which she demands. She may further have her title freed from illegal clouds thereon arising by an ignoring of her rights which were clearly shown of record. *Moore* v. *Harper, 27* W. Va. 362, syl. 2.

The decree must be reversed and the cause remanded to the circuit court for relief to be given plaintiff by proper orders, proceedings, and decrees. It is perhaps needless to say that in the making of a partition of the land, the circuit court should take into consideration rights and equities that may be apparent in favor of Walker in relation to a proper laying off of the respective interests in the land.

*Reversed and Remanded.*