Wilkinson & Wilkinson, of Mt. Vernon, and J. A. Ward, of Mt. Pleasant, for appellant.

Tom Garrard, State's Atty., and Grover C. Morris, Asst. State's Atty., both of Austin, for the State.

BERRY, J. The appellant was convicted in the district court of Franklin county for unlawfully manufacturing liquor, and his punishment assessed at confinement in the penitentiary for a term of two years. The evidence is amply sufficient to support the verdict.

[1] There are but three bills of exception contained in this record, and each of them complains at the court's action in permitting the state to reopen the case, after the defendant's testimony had closed, and offer testimony which the defendant claimed was not in rebuttal of any testimony offered by him. The first of these bills of exceptions shows that the court offered to permit the defendant to offer any other evidence he desired, and the defendant stated that he had none. The matter of confining the state strictly to rebuttal testimony is a question largely confided to the sound discretion of the trial court, and, in the absence of a showing that this discretion has been abused, this court will not reverse on account thereof. In this case there is no suggestion in this record that the trial court's discretion was abused in the particulars complained of, and appellant's complaints with reference thereto are without merit and are overruled.

[2, 3] In his brief appellant complains at the court's action in refusing to grant him a new trial on account of newly discovered evidence. The order of the court overruling the motion for a new trial states that the court overruled the same after he had heard the motion and the evidence submitted thereon, and the record fails to disclose that the evidence taken on said motion for a new trial was preserved by proper bill of exception or in any other manner, and in this state of the record there is nothing before this court for review. In the absence of the testimony heard on the motion for new trial, and where the order overruling same shows that evidence was heard, it will be conclusively presumed that the trial court acted correctly in overruling the same.

There being no errors in this record, it is our opinion that the judgment should be in all things affirmed.

PER CURIAM. The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.

On Motion for Rehearing.

LATTIMORE, J. [4] It is settled by the decisions of this court that, when the order of the trial court recites that evidence was heard by him in passing on the motion for new trial, and there is no evidence preserved and here presented by proper bill of exceptions, we will assume that the judgment of the lower court in overruling the motion is correct, and that it was supported by the evidence so heard. Harcrow v. State, 97 Tex. Cr. R. 275, 261 S. W. 1046. The affidavits attached to appellant's motion but reflect evidence of an alibi for appellant at some time before midnight on the occasion of the raid which formed the basis for the prosecution. The officers testified that, while they were watching the still before midnight, some one came to it; but none of them identified by name or description appellant or his companion as such visitor. The officers did testify that appellant and his companion, Tittle, came to the still about daylight and began to pour up the liquid and move the parts about, and otherwise show their interest in the operation of the still. Their actions, coupled with statements then made by them, are sufficient to support the conviction. The newly discovered evidence would in no likelihood have affected the result of the trial.

The motion for rehearing is overruled.

SOUTHWESTERN LUMBER CO. OF NEW JERSEY v. EVANS et al. (No. 1250.)

(Court of Civil Appeals of Texas. Beaumont. July 17, 1925. Rehearing Denied Oct. 14, 1925.)

1. Homestead ⟨key⟩122—Husband's conveyance of homestead, in which wife did not join, held to become effective as to both on acquisition of new homestead.

Where husband, after making conveyance of homestead, in which wife refused to join, in good faith acquired a new home and removed his family to it, held wife's interest in old homestead ceased on acquisition of new, and husbands' deed became effective as estoppel against his right to recover lands.

2. Adverse possession ⟨key⟩101—Title by adverse possession to entire tract not established, where claimant's possession extended only to subdivision.

Title by adverse possession to tract of land, which had been divided into three parcels, held not established, where claimant's actual possession extended only to one of such subdivisions.

3. Adverse possession ⟨key⟩101—Title by limitation to whole of subdivided tract cannot be predicated on adverse possession of single subdivision.

Where tract of land is subdivided and sold to different parties, a subsequent purchaser,

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

under deed conveying him whole, cannot claim by limitation those subdivisions on which he has never entered.

**4. Adverse possession ⬅️13—Possession which is actual, visible, notorious, distinct, and hostile is condition precedent to operation of statute.**

Possession which is actual, visible, notorious, distinct, and hostile is condition precedent to operation of statute of limitations.

**5. Adverse possession ⬅️101—Title by limitation held not to extend to timber on land, estate in which had been severed before commencement of claimant's possession.**

Where estate in land and merchantable timber thereon had been severed when one claiming by adverse possession took possession, *held* his title by limitation did not extend to timber, in absence of any acts indicating claim thereto.

**6. Trespass to try title ⬅️38(2)—Burden of proof as to outstanding title stated.**

Where adverse claimants of land both claim under common source, one of them, seeking to show an outstanding title, has burden of showing that such title is valid and superior to common title, and that it has not been acquired by common source.

**7. Evidence ⬅️230(3)—Claimant of title from common source not bound by declarations of such common source.**

One of adverse claimants of title from common source *held* not bound by declarations of that common source, concerning conveyances under which claimant asserted title.

On Motion for Rehearing.

**8. Limitation of actions ⬅️44(3)—Limitations held not to run against grantee of homestead under deed from husband alone until abandonment of homestead.**

Where husband, after making conveyance of homestead, in which wife did not join, continued in possession for several years, then acquired new homestead, and after many years conveyed old homestead to persons other than first grantee, *held*, under Vernon's Sayles' Ann. Civ. St. 1914, art. 5675, limitations against first grantee did not run until abandonment of homestead by grantor.

Appeal from District Court, Angelina County; L. D. Guinn, Judge.

Suit in trespass to try title by the Southwestern Lumber Company of New Jersey against Jim Evans and others. Judgment for defendants, and plaintiff appeals. Reversed and rendered.

Andrews, Streetman, Louge & Mobley, of Houston, for appellant.

Tom F. Coleman, of Woodville, and I. D. Fairchild, of Lufkin, for appellees.

O'QUINN, J. This is a suit in trespass to try title to 187 acres of land, less 25 acres, but not the timber thereon, out of the B. X.

Mudd survey in Angelina county, by appellant, against Jim Evans, A. E. Byrd, J. W. Townsend, R. W. Simpson, H. A. Lassiter, and Gordon Simpson.

The case was tried upon appellant's first amended original petition, containing the usual allegations of trespass to try title, and further alleging that defendants were engaged in cutting and removing timber from the land in controversy, and prayed for an injunction to prevent further cutting of said timber. Plaintiff also asserted title to the land under the 3, 5, and 10 year statutes of limitation. Upon the filing of a proper bond, the court granted a temporary injunction as prayed for by plaintiff.

Defendants J. W. Townsend and Simpson, Lassiter & Simpson answered by general demurrer, general denial, plea of not guilty, and the 5 and 10 year statutes of limitation. The defendants Evans and Byrd made no answer, and judgment went against them by default.

At the close of the evidence, both parties requested an instructed verdict. The court denied plaintiff's request, but granted that of defendants, and the verdict was accordingly returned and judgment duly entered. Motion for a new trial was overruled, and plaintiff brings this appeal.

The record shows that on January 30, 1875, T. S. Sayers conveyed the 187 acres of land in dispute to George Townsend. Townsend and wife conveyed 25 acres out of the northwest corner of the tract to J. C. Anderson, October 30, 1875. This 25 acres was by mesne conveyances conveyed to plaintiff. October 29, 1881, George Townsend conveyed, by general warranty deed, the 187 acres in controversy (describing it as in the deed from Sayers to him), to A. H. Viele, but calling it 167 acres. This land passed by mesne conveyances from Viele to D. L. Gallup in 1902. Gallup, on November 4, 1904, conveyed 25 acres out of the northeast corner of the 187-acre tract to Eli Gilliland, but reserved the merchantable pine timber on same, with the right to enter thereon at any time and remove said timber. June 30, 1920, Gallup conveyed the land (the 187 acres less the 25 acres conveyed to Gilliland) and the timber on the Gilliland 25 acres to plaintiff.

The defendants claimed the land under and by virtue of a deed from George Townsend and wife, Eliza Townsend, to J. W. Townsend, conveying the 187-acre tract on April 6, 1912. May 4, 1920, J. W. Townsend and wife conveyed a one-half interest in the 187 acres to Simpson, Lassiter & Simpson, a law firm, as a fee for defending a suit involving the land in the federal court at Tyler, Tex. Gentry's interest passed to Gordon Simpson. They also pleaded limitation of two periods, one of 10 years, embracing a period after the deed to Viele in 1881, and before the deed to J. W. Townsend in 1912, and the other of 5

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

years from and after the registration of the deed from George Townsend and wife to J. W. Townsend, April 6, 1912.

The case is before us on 61 assignments of error, and numerous propositions and counter propositions, but we shall discuss only such questions as we deem necessary to the disposition of the case.

George Townsend is the common source of title. The land was community property. .It is the contention of appellees that the deed from George Townsend to Viele was without effect and passed no title to the land in controversy, because the land, at the time of the execution of the deed, was the homestead of George Townsend and his wife, Eliza Townsend, and she refused to sign the deed. Appellant says that if it should be conceded that the land was the homestead of the Townsends at the time the deed was executed, that after the execution of said deed they abandoned their said homestead, and thereupon the deed became effective and passed the title.

It is without dispute that, shortly after he executed the deed to Viele, Townsend moved his family to Worden's Ferry on the Angelina river, where he operated a ferryboat and a grocery store, the house in which he lived being situated across the river in San Augustine county on land owned by Townsend. Appellees contend, however, that he continued to hold possession of and to have cultivated the homestead place from which he had removed. Whatever may be the facts of Townsend's moving his family to the ferry and living there after he made the deed to Viele, it is clear that some time between 1887 and 1894 Townsend acquired another home in San Augustine county, built a house thereon, and moved his family thereto, and has continuously resided in San Augustine county to the time of the trial of this case. It is insisted that he inherited the property upon which he established this home, and that it was not acquired by him as and for a home, but the record shows that he bought out several of the other heirs owning an interest in the land in which he inherited a portion, and bought additional lands adjoining thereto, built a house thereon, and moved into same for the purpose of making it his permanent home. He testified:

"The tract of land that I bought from J. L. Lakey and wife was on my mother's homestead. I suppose that I bought that about the time I heired the other tract I suppose, or maybe it was a little later, probably a year later. I think I moved there shortly after I heired the other tract. I don't remember exactly about that, but I moved on that land."

Again:

"When I bought the Lakey land I had quit cultivating the 187 acres."

The Lakey deed was dated August 24, 1887.

And:

"I built that house two or three years before my mother died and I moved my family into it, because that was the place where I wanted to live. I moved there in good faith and bought that place in good faith."

And:

"I think my mother died about 1896 or 1898. I am sure that is about the time of her death. After my mother died, I had a partition with the various heirs. W. J. Townsend and Mary Lakey were two of the heirs, but Matilda Hillyer was not one of my mother's heirs. Rebecca Miller was an heir. The deed passing between me and the Lakeys and the Millers was not after my mother's death; I think maybe a part of it was before, but I can't remember now which part was."

And:

"The Lakey trade was made before the Miller trade, and I was living at the ferry when I made the Lakey trade. I owned that tract at the ferry; a little place about five acres. I say I owned it, but my brother Jim bought it and let me have it and then I let him have it back, but I was claiming it as my own. I had a house on my place and my wife was living with me there a part of the time. When I was there she was there with me most of the time. I bought that place in good faith as a place to live, because I could tend to my store and ferry better there and look after my place. In saying looking after my place I refer to the Worden place."

And:

"It must have been three or four years before my mother died that I moved to the old home place in San Augustine county, but I am not certain about that. I know I moved there before she died. My remembrance is that my mother died in 1898."

And:

"It appears to me like the deed from J. L. Lakey and wife, Mary Lakey, was before my mother's death, but I can't tell you how long before it was. I can't tell you whether it was as much as four or five years, unless I could see the date of the deed. Matilda Hillyer was not one of the children, but I bought a small piece of land from her to put a house on. I used that house to live in. I bought that place from her to build a house on, built the house there and moved in it with my family." (The date of the deed to this tract bought from Matilda Hillyer was December 3, 1892.)

And:

"Before my mother died, I built the house on the place I bought from Matilda Hillyer. That was several years before the death of my mother, for my mother lived right close to me, and she was sick in bed for two or three years before she died, and I would go over and wait on her and look after her. I built that house two or three years before my mother died, and I moved my family into it because that was the place where I wanted to live. I moved there in good faith and I bought that place in good faith."

And:

"I owned a little piece of the Worden tract there at the ferry. I owned the place there where the house was situated, and I took my wife there with me when I went to that place."

Relative to selling the 187 acres to Viele, he testified:

"I can't remember about the transaction which shows in the record that I made a deed purported to be signed by me conveying 167 acres of this 187 acres to a fellow named Viele, but I think it was in 1875 that I made that deed to Viele. It might have been that year and it might have been later than that. If the record shows that the deed was made in 1881, maybe that is when it was made; I can't remember. I remember that I signed that deed. I sold him the land and made him a deed to it and I signed it, but my wife wouldn't sign it, and they tried to get her to sign it, but she wouldn't do it. If I ever got any money for that trade I don't remember it. I was to get $350, I think, but my wife wouldn't sign the deed. By brother Jim Townsend tried to get her to sign it, but she wouldn't sign it, and never did sign it. I bought that land with community money."

And:

"After I signed that deed I still claimed that land, with my wife, as our own until we sold it to our son."

The deed from Townsend to Viele was a regular warranty deed, recited a consideration of $350 cash in hand paid, and had nothing in it that indicated that Mrs. Townsend was expected to sign it. W. J. Townsend, referred to by George Townsend in his testimony as "my brother Jim," was the agent of Viele in making the purchase. The deed was executed by George Townsend, delivered to W. J. Townsend, the agent and representative of Viele, and placed on record.

[1] So, it is undisputed that Townsend, after making the deed to Viele, in good faith acquired a new home in San Augustine county, and removed his family to same, and continued to live there. This, as a matter of law, constituted an abandonment of the 187-acre tract as a homestead. When he acquired the new home and moved his family thereto, intending to make same his home, the deed to Viele became effective as an estoppel against his right to recover the land, and his wife's right in same, being that of homestead only, ceased when a new homestead had been acquired. Fisher v. Gulf Production Co. (Tex. Civ. App.) 231 S. W. 450 (writ denied); Marler v. Handy, 88 Tex. 421, 31 S. W. 636; Slavin v. Wheeler, 61 Tex. 654; Parker v. Schrimsher (Tex. Civ. App.) 172 S. W. 175; Hudgins v. Thompson, 109 Tex. 433, 211 S. W. 586. There is no evidence in the record that Townsend and his wife ever intended to return to the 187-acre tract as their homestead, and the deeding of same to their son J. W. Townsend is but further proof of their abandonment of same. Hudgins v. Thompson, 109 Tex. 443, 211 S. W. 586.

Appellees insist that they have shown limitation of 10 years after the execution of the deed to Viele in 1881 by George Townsend, and before the execution of the deed to J. W. Townsend in 1912. As the property was the homestead of George Townsend and wife at the date of the execution of the deed to Viele, and as Mrs. Townsend did not join in the execution of said deed, the title did not vest in Viele to the land, until the abandonment of the homestead by George Townsend and his wife when they acquired the new home in San Augustine county. The exact date of this is not shown, but it is shown to have been about 1887, or shortly thereafter, and as the title to said land remained in Townsend and his wife until that time, limitation by reason of their possession of the land after the date of the Viele deed did not run in their favor, for as Viele did not have the title, and they already had the title, there was nothing for limitation to run against until the deed became effective. Besides, appellant, through its agents, took possession of the land after Townsend moved his family away, renting it to tenants for several years, collected the rents, and finally, about 1899, moved the house off the premises and removed and destroyed the fence, after which time neither party was in actual possession. This entry by appellant broke the possession of the Townsends, if any they had, and it is not shown that they took possession after said entry by appellant until the deed to J. W. Townsend in 1912.

[2] Appellees also contend that they have shown limitation of five years from and after the registration of the deed from George Townsend and wife to defendant J. W. Townsend in 1912. This contention cannot be sustained, because the 187-acre tract had been divided into three parcels, two of 25 acres each, and one embracing the remainder. One of the 25-acre tracts was sold by George Townsend and wife to J. C. Anderson soon after they got the land from Sayers. This 25-acre tract was located in the northwest corner of the 187 acres. This 25 acres was later acquired by appellant. Appellant conveyed to Eli Gilliland the other 25-acre tract, less the merchantable pine timber on same. This 25 acres was located in the northeast corner of the 187 acres. When George Townsend and wife conveyed the land to their son, appellee J. W. Townsend, they included the Anderson 25 acres, notwithstanding they had sold same many years before to Anderson. When J. W. Townsend took possession under the deed from his parents, he did so by locating on the Gilliland 25 acres. He built a house there and fenced and cultivated some 8 acres, and it is agreed in the record that the house and inclosed land are all entirely upon the Gilliland 25 acres.

· [3, 4] The rule is well settled that where a tract of land is subdivided and sold to different parties, a subsequent purchaser of the whole tract entering under such deed (conveying to him the whole tract) cannot claim by limitation those subdivisions upon which he has never entered. His adverse possession of one subdivision will not extend to such other subdivisions as have not been invaded by his actual possession. A condition precedent to the operation of the statute of limitations is possession, actual, visible, notorious, distinct, and hostile. Turner v. Moore, 81 Tex. 206, 16 S. W. 929; Gerhart v. Moore (Tex. Civ. App.) 229 S. W. 876.

[5] Appellant contends that appellees' claim of limitation, as pertaining to the merchantable pine timber on the Gilliland 25 acres, is not well taken. The basis of this contention is that, when Gallup conveyed the 25 acres to Gilliland in 1904, he reserved the merchantable pine timber on same, with the right to at any time enter thereon and remove said timber, and that thereby the estate in the land and merchantable pine timber thereon had been severed, and that as appellee J. W. Townsend had taken possession only of the surface of the said 25 acres, his possession did not extend to said timber, and hence the claim of limitation as to said timber was not supported in the record.

We think the contention should be sustained. It is shown by the record that Gallup did reserve the merchantable pine timber, together with the right to at any time go upon the land for the purpose of removing same from said 25 acres conveyed to Gilliland, and that appellee Townsend's possession was entirely upon said 25 acres. It is not shown that he ever committed any acts indicating a claim to the timber, until shortly before the institution of this suit, when he began cutting said timber, when this suit was immediately filed, and he was enjoined from cutting same. The law is well established that if minerals under the ground or timber growing upon the surface of same have been severed from the surface by a deed of conveyance, possession of the surface alone for the time required by the statute of limitation does not give title to the minerals or timber by adverse possession. After the estate in the timber has been severed by the deed, possession of the surface is not possession of the timber, and, therefore, is not adverse to the owner of the timber. There must be such possession of the timber evidenced by acts of ownership and control as will amount to an open, notorious, distinct, and hostile adverse claim and possession as required by the statute. Prince v. Frost-Johnson Lbr. Co. (Tex. Civ. App.) 250 S. W. 785; Wallace v. Hoyt (Tex. Civ. App.) 225 S. W. 425.

[6] Appellees attempted to defeat appellant's title by showing an outstanding title. For this purpose they offered in evidence a deed of trust from Richard Waterhouse to J. H. Bemis, trustee, dated January 21, 1871, and the trustee's deed to Erastus Jones, dated August 6, 1901. To the introduction of these instruments, appellant urged numerous objections, among others, that it did not appear that they covered the land in controversy. The objection should have been sustained. We do not believe that the instruments in any degree of certainty indicated that they covered the land in dispute. Phillips v. Ayres, 45 Tex. 607. However, if the deed of trust and the trustee's deed could be said to show an outstanding title, it was incumbent upon appellees to show that such outstanding title was a valid title superior to the common title, and that such outstanding title had not been acquired by the common source. Rice v. Railroad Co., 87 Tex. 93, 26 S. W. 1047, 47 Am. St. Rep. 72; Houston Oil Co. v. Choate (Tex. Civ. App.) 215 S. W. 123; McBride v. Loomis (Tex. Com. App.) 212 S. W. 480; Caruthers v. Hadley (Tex. Civ. App.) 134 S. W. 757. This was not done.

[7] Appellees contend that, as appellant elected to rely upon and to prove a common source of title, it is bound by the declarations of the common source, and that it cannot be heard to complain. As we understand this contention, it is meant to assert that as George Townsend was shown to be the common source of title, and as he testified that the land conveyed by him to Viele was at the time the homestead of himself and wife, and that she refused to sign the deed, and that he and his wife claimed the land as their homestead until they sold it to their son, appellee J. W. Townsend, that appellant is bound by his, George Townsend's declarations, and cannot here assert to the contrary. This contention is wholly without merit. To hold this to be the true rule in such cases would be to put vendees completely at the mercy of persons who would, by their solemn contracts in writing, obtain money from purchasers of their property, and then without scruple testify to the contrary of their written contracts and thus fraudulently obtain the money of their victims and retain the property for which the money in good faith had been paid. Appellees cite no case holding their contention to be the law, and we do not believe that any case so holding can be found.

Many other questions are presented, some of which we believe show reversible error, but as we have concluded that the judgment should be reversed and rendered for appellant, it is not necessary to discuss them. Accordingly, the judgment of the court below is reversed, and judgment here rendered that appellant recover of the appellees the land and timber in controversy, together with all costs of suit, and that the injunction granted by the court below, restraining appellees from cutting the timber in controversy, be made perpetual.

Reversed and rendered.

On Motion for Rehearing.

We shall discuss but one of the propositions appellees present in their motion for rehearing, that is that we erred in not sustaining their contention that they had established their defense of 10-year limitation after the execution of the deed to Viele by George Townsend and before the execution of the deed to J. W. Townsend by George Townsend and his wife, Eliza Townsend. We held:

"Appellees insist that they have shown limitation of 10 years after the execution of the deed to Viele in 1881 by George Townsend and before the execution of the deed to J. W. Townsend in 1912. As the property was the homestead of George Townsend and wife at the date of the execution of the deed to Viele, and as Mrs. Townsend did not join in the execution of said deed, the title did not vest in Viele to the land, until the abandonment of the homestead by George Townsend and his wife when they acquired the ·new home in San Augustine county. The exact date of this is not shown, but it is shown to have been about 1887 or shortly thereafter, and as the title to said land remained in Townsend and his wife until that time, limitation by reason of their possession of the land after the date of the Viele deed did not run in their favor, for as Viele did not have the title, and they already had the title, there was nothing for limitation to run against until the deed became effective."

[8] We adhere to this holding. The title to the land did not vest in Viele until Townsend and his wife abandoned the land as a homestead by acquiring a new home in San Augustine county, and, therefore, Viele had no cause of action against them for the title and possession of the land until the act of abandonment became complete—until then he had no right of entry—his cause of action had not accrued. Article 5675, Vernon's Sayles' Civil Statutes; Port Arthur Rice Milling Co. v. Beaumont Rice Mills, 105 Tex. 514, 521, 143 S. W. 926, 148 S. W. 283, 150 S. W. 884, 152 S. W. 629; Deaton v. Rush, 113 Tex. 176, 194, 252 S. W. 1025; Lynch v. Brookover, 72 W. Va. 211, 77 S. E. 983, 987; 25 Cyc. 1065. . Furthermore, as we said in our original opinion, appellant, through its agents, took possession of the land after Townsend moved his family away, renting it to tenants for several years, collected the rents, and finally, about 1899, moved the house off the premises and removed and destroyed the fence, after which time neither party was in actual possession. This entry by appellant broke the possession of the Townsends, if any they had, and it is not shown that they took possession after said entry by appellant until the deed to J. W. Townsend in 1912.

The motion is overruled.