# Smith et ux. v. Hughes et al.

Feb. 6, 1942.

As Modified on Denial of Rehearing Dec. 18, 1942.

Dissenting Opinion Jan. 12, 1943.

724

O. M. Smith for appellants.

H. W. Linton and S. Y. Trimble for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

On September 26, 1900, the widow, two sons and two daughters of U. D. Cleavinger conveyed to M. L. Hughes, the husband of one of the daughters, a farm in Logan County containing 75¾ acres. Since the crucial question in this litigation is the effectiveness of the purported conveyance to vest in the grantee the undivided one-fourth interest theretofore owned by his wife, we shall set forth the deed, omitting only the description:

"This indenture made and entered into this the 26th day of September, A. D. 1900, by and between Mrs. M. A. Cleavinger, widow of U. D. Cleavinger, deceased, John W. Cleavinger, and F. A. Cleavinger, his wife, E. A. Cleavinger and A. L. Cleavinger his wife, C. W. Cornelius and Mattie D. Cornelius, his wife, M. G. Hughes, wife of M. L. Hughes, children and heirs of U. D. Cleavinger, deceased, parties of the first part, and M. L. Hughes of the second part, all of Logan County, Kentucky.

"Witnesseth: That for and in consideration of the sum of Fourteen Hundred Dollars paid and to be paid as follows, Viz: Eight Hundred Dollars cash in hand paid the receipt of which is hereby acknowledged and the remainder to be paid in three payments of Two Hundred Dollars each as follows: Two hundred dollars on — day after date, Two Hundred Dollars on or before the 1st of January 1902, and Two Hundred Dollars on or before the 1st day of January, 1903, with interest on each from date, and vendors lien retained on the land herein conveyed to secure said notes and interest

said notes being made payable to the heirs of said U. D. Cleavinger, deceased, have bargained and sold and hereby convey unto said second party, his heirs and assigns forever the following tract or parcel of land in Logan County, Kentucky, on the waters of Dry Fork, and on the Hopkinsville road, West of Russellville, which is bounded as follows, To-wit:

&ast; &ast; &ast; &ast; &ast;

"Containing 75¾ acres, it is mutually understood and agreed that out of the purchase price of $1400.00 there is to be taken $160.00 of indebtedness against the estate of U. D. Cleavinger, deceased, which leaves the sum of $1240.00, on which sum the widow above named is entitled to 6% interest per annum to be paid to her semi-annually, by the four heirs aforesaid, on the first days of January and July of each year during her natural life; and whereas, it is agreed among all the parties hereto that the $640.00 remaining of the $800.00 cash payment after paying the debt aforesaid, shall be equally divided among the four heirs aforesaid, whereby they will each have $160.00 and the said Hughes desiring to pay off his first note mentioned herein, thereby adding $50.00 to the $160.00 advanced to the other three heirs, making all four of them each responsible for interest on the sum of $210.00 each to the widow payable as aforesaid, and when the second note is paid the proceeds is to be divided as before among the four heirs, and interest on this addition as well to be accounted for during the life of said widow but the third and last notes is not to be paid during the lifetime of the said widow, but be held and the interest regularly paid to meet funeral expenses &c. of said widow, and the remnant of said note, if any, divided equally among said heirs; and if either of said four heirs fail to meet his accruing interest when due then any other of the said heirs may advance the interest so due and unpaid and shall be reimbursed out of the proceeds of said dafaulters interest in said note when paid over by the party of the second part for division among the said four heirs.

"To have and to hold said tract of land with all appurtenances, thereon unto the said party of the

second part, his heirs and assigns forever, with 'Covenant of General Warranty.'

"Given under our hands this the day and date first herein written.

"M. A. Cleavinger      A. L. Cleavinger
"J. W. Cleavinger      M. G. Hughes
"F. A. Cleavinger      M. L. Hughes
"E. A. Cleavinger      M. D. Cornelius
       C. W. Cornelius."

The instrument was duly signed and acknowledged by the parties, including the grantee, M. L. Hughes, and on its margin, as recorded in the county court clerk's office, appears the following release:

"The whole consideration mentioned herein has been paid in full and the lien retained in the within deed is now released.

This July 20, 1907.

       J. W. Cleavinger
       E. A. Cleavinger
       A. L. Cleavinger
       M. G. Hughes
       C. W. Cornelius.

Attest:
     Geo. C. Russell, Clerk."

Thus it would appear that the conveyance of Mrs. Hughes' undivided interest was made direct to her husband, and that the husband was not named as a grantor, —objections heretofore regarded of sufficient import to nullify either an attempted conveyance by a married woman to her husband, or an attempted conveyance to a third person,—nevertheless, according to the record, Mrs. Hughes received her full share of the consideration and the deed indisputably vested her husband with the undivided interests of U. D. Cleavinger's other heirs.

The widow of U. D. Cleavinger had resided in the residence on the property since her husband's death, and after her son-in-law, M. L. Hughes, took possession following the execution of the deed, resided with him as a member of his family until her death in 1906. Thereafter, M. L. Hughes and his wife lived in the residence until the wife's death in 1933. In 1931 they had mortgaged the property to the Federal Land Bank, and in

1934, M. L. Hughes sold and conveyed the property to W. E. Wilson who assumed the unpaid portion of the mortgage indebtedness. On October 4, 1937, Wilson sold and conveyed the property to its present owner, the appellant, E. R. Smith, who likewise assumed the balance due on the mortgage.

The appellees, Roy W. Hughes and Mabel C. Keeling, are the children of M. L. Hughes and M. G. Hughes. Claiming that their mother's deed of September 26, 1900, by which she attempted to convey her undivided interest in the property to her husband, was void, and that they had inherited that interest upon her death, subject to their father's right of curtesy which terminated on his death in 1936, the appellees instituted this action against appellants, seeking an adjudication to that effect, a recovery of rents and a sale of the property.

Appellants denied that the mother's deed was void and pleaded the 30 year Statute of Limitation (Kentucky Statutes, sec. 2508) and estoppel in bar of appellees' claims. The Chancellor granted the relief sought, other than a recovery of rents, and this appeal is from that judgment.

Appellants failed to prove any act or conduct on the part of appellees which would estop them from asserting their claims of title. The Statute of Limitations is unavailing as a defense, because of the fact that the wife and husband occupied the property jointly, and the possession of neither could be deemed adverse to the rights of the other. Howard v. Turner et al, 287 Ky. 206, 152 S. W. (2d) 589. But it was not alleged that M. L. Hughes overreached his wife or her kindred, or paid for the land less than it was worth, nor was it suggested that his grantee, or the present title holder acquired the lands with actual knowledge of appellees' claims, or for less than adequate considerations.

Thus appellees' right to any portion of the land rests, not in good conscience, but upon decisions embodying concepts of the common law born of an age which regarded a married woman as ''sub potestate viri,'' and less capable of exerting her will than infants and others laboring under disabilities whose deeds were merely voidable, not void. Hence, she was precluded from conveying her land to anyone, unless her husband

united in the deed as a party grantor. Even then, by the Statutes of Virginia and Kentucky, it was required that she be privily examined and her acknowledgement taken in open court, or, where that was not convenient, by two justices commissioned for that purpose. By later enactments, clerks of courts authorized to take ac- acknowledgments of deeds were empowered to conduct the privy examination; but, unless the certificate show- ing the privy examination was recorded with the deed, the instrument was utterly void, regardless of how clearly it might be established by other proof that these formalities, had been complied with. The object of this requirement was to rebut the otherwise conclusive pre- sumption that in matters of import, the wife always act- ed under the coercion of her husband. The equally fa- lacious supposition that she and her spouse constituted an indivisible unit, precluded her from contracting with him on any subject, and hence, from conveying her prop- erty to him under any circumstances. Moreover, al- though, upon marriage, he acquired absolute title to her personalty and could alienate her real estate for the period of his lifetime without her consent, he could not unite as a grantor in her deed to him, had she been capable of so conveying, since, as this Court once ex- pressed it, "She and her husband cannot, in conjunc- tion, make a deed to the latter, because two parties are necessary to every deed, and one person cannot occupy the attitude both of bargainer and bargainee, or donor and donee." Scarborough v. Watkins and wife, 9 B. Mon. 540, 50 Am. Dec. 528.

Stating that the generally assigned reason why a wife could not contract with her husband was "that the wife having lost her legal unity, she and her husband are one person in legal contemplation, and it would be absurd for any person to enter into a contract with him- self," the author of that opinion gave as the true reason why a wife could not convey directly to her husband, "the wife is under the coercion of the husband, and be- ing thereby deprived of freedom of volition, should not be bound by her contracts with him." See also Newby v. Cox, 81 Ky. 58. Thus it resulted that the only way a wife could transfer her real estate to her husband was to convey it, in conjunction with her husband, to a third person, who, in turn, would convey it to the husband.

The disabilities and indignities inflicted upon mar-

ried women by the Common Law with respect to their property rights were somewhat ameliorated by the Statute of 32 Henry VIII, re-enacted in this State in 1798. 1 Stat. Law (Morehead and Brown) 582. See Miller v. Shackleford, 3 Dana 289, in which the Statute is set forth and its effect explained. Subsequent statutory enactments, equitable devices, such as estoppel, and the creation of separate estates through trusteeships afforded a modicum of relief. Eventually statutes were adopted in many states authorizing married women to own and deal with property as femmes sole, and in New York, by statute, she was empowered to convey land directly to her husband.

In 1894, the Legislature of Kentucky enacted what is known as the "Weissinger Act" comprised within Sections 2127—2148, Kentucky Statutes. By its provisions married women were vested with all the rights theretofore possessed by single women respecting the acquisition, ownership, management, and disposition of property, except that they might not make contracts to sell, convey or mortgage their real estate, unless their husbands joined in such contracts, and might not become surety for the fulfillment of other persons' obligations or answerable for their defaults or misdoings without setting aside, by mortgage or other conveyance portions of their estates for that purpose. The right conferred upon them to contract included the right to contract with their husbands, to sue them on such contracts, and to enter into partnerships with them for the conduct of business enterprises, thus effectually exploding the Common Law theory that a wife and husband constituted an indivisible unit. Coleman v. Coleman, 142 Ky. 36, 133 S. W. 1003; Smith v. Butt & Hardin, 281 Ky. 127, 135 S. W. (2d) 67. So sweeping was the effect of the Weissinger Act on the Common Law concepts theretofore prevailing, that Judge Newman, in his work on Kentucky Pleading and Practice, was moved to quote the lament of Chancellor Kent over the enactment of the New York statute abolishing the rule in Shelley's case, the opening sentence of which is:

"The juridical scholar, on whom his great master, Coke, has bestowed some portions of the 'gladsome light of jurisprudence,' will scarcely be able to withhold an involuntary sigh as he casts a retrospective glance over the piles of learning devoted to de-

struction by an edict as sweeping and unrelenting as the torch of Omar.''

But the provisions of Section 17, Chapter 186 of the Acts of 1893, identical with the present Kentucky Statute, Section 506, except as to the provision respecting acknowledgments, was not repealed, and that Act provided that a married woman's conveyance ''may be by joint deed of husband and wife, or by separate instrument; but in the latter case the husband must first convey, or have theretofore conveyed.''

The fact that the Weissinger Act required that the husband unite only in the wife's executory contracts respecting her real estate apparently was not noted by the Court, and no attempt was made to differentiate between conveyances directly by the wife to the husband and conveyances by the wife to a third person, a differentiation manifestly required if full effect was to be given to the Weissinger Act and that Act reconciled with the quoted provisions of Section 506. Accordingly, in several cases subsequent to the adoption of the Weissinger Act, this Court, without discussion and following its prior rulings, held that direct conveyances from wife to husband were void. Hall v. Hall, 236 Ky. 42, 32 S. W. (2d) 536; Ray v. Bushakra, 237 Ky. 178, 35 S. W. (2d) 19; Hensley v. Lewis, 278 Ky. 510, 128 S. W. (2d) 917.

But no reason is apparent why the Common Law rule should have been adhered to, since all reasons for its adoption in the first instance had ceased to exist. By the terms of Section 506, Kentucky Statutes, it is still necessary that the husband unite as a party grantor in the wife's deed conveying her real estate to a third party, unless he had theretofore conveyed by separate instrument. But the Act of 1894 does not except from the powers conferred upon a married woman the right to convey property to her husband; and it would seem that the requirements of Section 506 are fulfilled to all reasonable intents and purposes by the husband uniting in the deed as *grantee* where it is the intent of the parties to vest him with the title. The requirement that the husband unite in the wife's deed to a third person may shield her from imposition at the hands of those presumably better versed in the ways of finance. It may also serve to protect the expectant rights of the husband, but no conceivable purpose can be served by re-

quiring a conveyance by the wife and husband to a third party where the object to be accomplished is the vesting of title in the husband. If the husband is to be the grantee, the necessity of protecting the wife against the unscrupulous person who would take advantage of her ignorance, is eliminated, unless he, himself, is the potential villian, in which event, protection would be impossible, since the means which would enable him to procure her signature and acknowledgment of an instrument conveying the property to a third person would be equally efficacious in procuring her signature and acknowledgment of a deed to him.

Hence, we have reached the conclusion that the rule prohibiting a wife from conveying her property direct to her husband has had no proper place in our jurisprudence since the enactment of the Weissinger Act.

A provision of the Alabama Code, Code 1886, Section 2348, Code 1940, Tit. 34, Section 73, originally enacted in 1876, permitted the transfer of a married woman's property by joint conveyance of the wife and husband. A subsequent statute permitted a husband and wife to contract with each other, but prohibited her from becoming surety for her husband. Section 2349, Code 1940, Tit. 34, Section 74. In construing these statutes, the Supreme Court of Alabama in the case of Osborne v. Cooper, 113 Ala. 405, 21 So. 320, 321, 59 Am. St. Rep. 117, in which the validity of a deed executed by a wife direct to her husband was attacked and upheld, said:

"A sale of land by the wife to the husband is certainly a contract between them, and such a contract, when not within the prohibitory provisions of said section of the Code [Section 2349], is one clearly within its authorization, and under it, the wife may now,—as she could not do under the former married woman's law,—sell and convey her statutory real estate on an adequate, fair consideration, directly to her husband; and construing this and the preceding section [2348] together, as is proper, we must hold, that the inhibition of section 2348 against the sale of the real estate (or against mortgaging it, as a recent amendment of that section also embraces), applies to sales or mortgages

by the wife to a third person, other than her husband.''

We have quoted this excerpt from the opinion of the Alabama Court because it expresses our views as to the proper construction to be given Kentucky Statutes, Section 506 in the light of the powers conferred upon married women by the Weissinger Act.

The doctrine of stare decisis has been urged upon us by appellees' counsel, but, as said by this Court in the case of Oliver Co. v. Louisville Realty Co., 156 Ky. 628, 161 S. W. 570, 576, 51 L. R. A., N. S., 293, Ann Cas. 1915C, 565, in which the wholesomeness of the doctrine was fully recognized:

"It, however, seems to us apparent that the doctrine of stare decisis, giving to it what may be called a personal application, cannot be relied on by a party who has not, in good faith, been deceived by the decision under which he claims to have acted; and, when it appears that a party was not misled to his prejudice by relying on a decision that the court rendering it subsequently concluded was erroneous, the court will not feel estopped to overrule it by the insistence of the party claiming to have acted under it that it would overturn contracts and engagements that he had entered into on the faith of it.''

Where property rights have been acquired or obligations incurred in reliance on the interpretation heretofore placed by us on the Statutes referred to, that interpretation will be adhered to in so far as may be necessary to protect such rights or prevent loss. But the appellees are not within the class of litigants entitled to invoke the benefit of this qualification of the effect of our present interpretation, and accordingly, the judgment is reversed with directions to dismiss the petition.

Whole Court sitting.
Judges Thomas, Rees and Ratliff dissenting.
Thomas, Judge.

I dissent from the opinion upon the two grounds of (1) that it is in total disregard of a mandatory requirement of the stare decisis doctrine, and (2) because it misinterprets and misapplies section 2128 of Baldwin's 1936 edition of Carroll's Kentucky Statutes (being sec-

tion 404.020 of the 1942 Kentucky Revision of the statutes), which is a part of what is commonly known as the "Wiessinger Act" of 1894. As correctly pointed out in the opinion, the common law of England forbids contracts between husband and wife, and also forbids the transfer of her title to real estate without her husband joining as grantor in the conveyance. That, of course, became the law of the American Colonies, and of the states of this Union when and as they were formed. It, of course, was competent for the legislature to abolish or alter the law in such respects by express enactments. Hence, there appeared enactments, whereby wives might be made femme soles, which enlarged their rights of contract with reference to their property, as well as curtailed the dominion over it of their husbands and the latter's rights in it. Kentucky had such a statute long before the enactment of the Weissinger Act. But none of such statutory modifications dispensed with the necessity of a husband joining in the deed of his wife in transferring her title to her real estate, or by executing his separate conveyance prior to the wife's deed conveying her real estate, and which was so required by our legislature in the enactment of section 506 of the same edition of Baldwin's Statutes, supra (section 382.050 of KRS). It was enacted prior to that of the Weissinger Act. In the notes to the two sections, as contained in the Baldwin Revision many cases are cited wherein this Court held that an attempted conveyance by the wife of her real estate—without her husband appearing therein as a grantor in the manner prescribed by the sections of the statute, was void, and which holding, it will be perceived, was continued to be followed after the enactment of the Weissinger Act. That conclusion, following the enactment of the Weissinger Act, necessarily resulted from the express terms of the section of that act supra, wherein it is said: "She may make contracts and sue and be sued, as a single woman, *except that she may not make any executory contract to sell or convey or mortgage her real estate, unless her husband join in such contract.*" The italicized part of the excerpt expressly preserves the necessity at common law for the husband to join with his wife in the conveyance of her real estate, and the cited cases in the notes to that section hold that unless her husband did so join, then his wife's sole conveyance of her real estate would be ineffectual, invalid and void.

The universal holdings of this and other courts of the Union—both as to the necessity of the husband joining in the conveyance and the wife's inability to contract directly with her husband—thus became rules of property, which, under the stare decisis doctrine, should continue to be followed by courts, unless changed by statute. It will be seen that the last-cited section, supra (506 of the Baldwin Revision of our Statutes), was in effect at the time of the enactment of the Weissinger Act, and, also, that the latter act did not change the statutory or common-law rule as to conveyance of the title of the wife to her real estate, but expressly retaining it. Nevertheless, the opinion of the majority of the Court has interpreted it, not only in disregard of the stare decisis rule, but in direct conflict with the express exception contained by the excerpt supra from the Weissinger Act itself—thereby, in effect, repealing that exception.

But it is said in the majority opinion that we have heretofore interpreted the provisions of the Weissinger Act as authorizing the wife to make certain character of contracts with reference to the use and appropriation of her individual property, and which may be done directly with her husband; but in every case where such interpretation was made and applied it was with reference to contracts other than the conveyance of title to her real property. Therefore, under such interpretations the wife may enter into tenancy contracts with her husband relating to the use of her real estate, but not involving the conveyance of her title to it; likewise when the wife may contract under the terms of such enlarging statute as the Weissinger Act, she also may have remedy in the courts to enforce her rights thereunder.

Since, therefore, the majority opinion violates the fundamental principles of the stare decisis rule, and since it conflicts with the express provisions of the Weissinger Act, and, since it is not attempted to be supported by any other principle of adjudicated or statutory law (according to my interpretation) I most respectfully dissent.

Rees and Ratliff, Judges, joining me therein.