## COOPER v. COOPER.

Court of Appeals of Kentucky.

March 21, 1952.

As Modified on Denial of Rehearing

May 30, 1952.

Leslie W. Morris, Frankfort, T. E. Moore, Jr., Hazard, Tilford & Wetherby, Louisville, for appellant.

S. S. Willis, Ashland, W. E. Faulkner, Hazard, for appellee.

CULLEN, Commissioner.

On June 8, 1944, Claude V. Cooper filed suit, in Florida, seeking a divorce from his wife on the grounds of cruel and inhuman treatment. On June 16, 1944, Mrs. Cooper filed suit, in the Perry Circuit Court in Kentucky, seeking permanent alimony from her husband and asking that a deed she had executed to him be set aside. Each party entered a personal appearance in the other's action.

On May 6, 1946, judgment was entered by the Florida court, granting Mr. Cooper an absolute divorce. On September 30, 1948, a judgment was entered in the Perry Circuit Court dismissing Mrs. Cooper's action on the ground that the Florida judgment constituted a bar to her right to receive alimony. On Mrs. Cooper's appeal, this Court reversed the judgment, holding that the Florida judgment did not preclude Mrs. Cooper from recovering alimony in her Kentucky action. Cooper v. Cooper, 314 Ky. 413, 234 S.W.2d 658. We also held that the circuit court should have considered and ruled on the question of setting aside the deed. Our mandate was that the court rule on the deed question, and "hear proof as to the question of alimony."

Upon the case being remanded, proof was taken by depositions, directed mainly to the facts concerning the financial conditions of the husband and wife, and the amount of alimony that should be allowed. This new proof touched some on the question of the fault of each party in the breaking up of the marriage, but the parties depended for the most part, concerning the question of fault, on depositions taken for use in the Florida action, copies of which had been filed in the Kentucky action before the first appeal was taken.

Judgment was entered granting Mrs. Cooper permanent alimony in the amount of $125,000, and setting aside the deed by which Mrs. Cooper had conveyed the family home in Hazard to her husband. For the purpose of securing the alimony award, the judgment further directed that Mr. Cooper turn over to the master commissioner, for sale, certain stock in the Peoples Bank of Hazard, and that the bank pay over to Mrs. Cooper some $24,-600 in cash representing accumulated dividends on the bank stock, which had been attached in the action.

The case is now before us on Mr. Cooper's appeal from the latter judgment. The main issues are whether Mrs. Cooper is entitled to alimony, and if so, the amount thereof.

The appellant seeks to argue again the question of whether the Florida divorce judgment barred Mrs. Cooper's right to claim alimony, but that question was settled on the first appeal and will not be again considered.

Concerning the question of fault, Mr. Cooper contends, first, that the only evidence of any fault on his part is that set forth in the depositions taken on behalf of Mrs. Cooper for use in the Florida action, copies of which were filed in the Kentucky action, and that these depositions were not admissible because they were not

properly authenticated. It appears that the parties stipulated that "properly authenticated" copies of the Florida depositions taken on behalf of either party could be filed and treated as evidence in the Kentucky action. Mr. Cooper construes the stipulation as requiring technical authentication as provided in KRS 422.040 for court records of other states. We think the parties were concerned only with authenticity. Mrs. Cooper's depositions were certified by the officers who took them, in accordance with the requirements both of the Florida statutes and our Code of Civil Procedure, and there is no contention that the depositions were not authentic. Under these circumstances the court did not err in receiving the depositions as evidence.

Mr. Cooper strongly urges that, even admitting the depositions on behalf of Mrs. Cooper, there is little or no competent evidence to establish any fault on his part, and there is ample evidence to support the grounds of cruel and inhuman treatment by Mrs. Cooper, on which the Florida court granted him a divorce. We will briefly review the evidence on this question.

The parties were married in 1921, and lived together in Hazard until 1941. They had three children, two sons and a daughter, who at the time of the separation were in their late teens. Reducing the evidence to the essentials, it appears that Mrs. Cooper, at around the age of 40, entered into a prolonged and severe menopause period. She became irritable, quarrelsome, suspicious, nagging, and highly nervous and excitable. She suffered an extreme emotional disturbance, which required periods of hospitalization, and she frequently used sedatives or "nerve medicine." Unquestionably, her condition made life somewhat burdensome for her husband, and interfered with his peace and happiness. However, instead of bearing his burden with patience and kind understanding, he "took up" with another woman and sought by various methods an escape from his domestic problems. He went to Florida and established a home in which the "other woman" lived as his housekeeper, and after his divorce he married her.

Under this evidence, while there may have been some justification for Mr. Cooper's seeking a separate abode, we can find no basis for a holding that Mrs. Cooper, by her conduct, abrogated her husband's duty to provide support for her according to his ability and estate. While, admittedly, she may have been in some degree at fault, her physiological condition is an extenuating circumstance, and her failure to meet the standards required of a wife in good health cannot furnish the basis for depriving her of all her rights under the marriage contract.

■ Concerning the amount of alimony, there are a number of factors to be considered. It appears that Mrs. Cooper did not contribute, through her industry or business acumen, in the accumulation of the fairly substantial estate owned by her husband. The amount of his estate, according to his testimony, is around $150,000, while the wife's evidence places the value at $300,000. The estate consists in the main of stocks and bonds.

At the time of the separation, Mrs. Cooper had no property or estate of her own. However, after the parties had separated, Mr. Cooper turned over to her some stock in the Home Insurance Agency, which he claims had a value of $50,000, and it seems proper to consider this in determining his liability for alimony. Mr. Cooper and a brother of Mrs. Cooper each owned one-half of the stock of the insurance agency corporation, and there is evidence that in 1941 the corporation made a net profit of $18,000. Mr. Cooper, up until June 1944, drew a monthly sum of $150 from the corporation, but after he went to Florida Mrs. Cooper's brother refused to allow him to draw any further funds from the corporation, and Mr. Cooper then turned the stock over to his wife. The evidence is that the brother then established an insurance agency in his individual capacity and took over, as an individual, the renewals and other insurance business of the corporation, thus rendering the corporation stock valueless.

If the stock had a substantial value at the time it was turned over to Mrs. Cooper, which appears to be true, and it there-

after became valueless because Mrs. Cooper's brother, as the other stockholder, appropriated the business to his individual use, then Mrs. Cooper's remedy is against her brother, and Mr. Cooper cannot be required to replace the value of the stock by way of alimony.

Taking into consideration Mrs. Cooper's life expectancy (she is around 50 years of age), the standard of living of the parties during the marriage, the value of Mr. Cooper's estate, the degree of fault of each party, and all the other factors involved, and giving some consideration to the value of the insurance agency stock, we are of the opinion that Mrs. Cooper should be awarded $35,000 in cash, as lump sum alimony, out of her husband's present estate. The allowance of $125,000 by the lower court clearly was excessive.

In addition to the alimony allowance, Mrs. Cooper should be granted the use for her life of the family home in Hazard. For reasons presently stated; we think the lower court erred in vesting absolute title to the home in Mrs. Cooper.

Mr. Cooper purchased the family home in 1935, but had the title placed in his wife's name. In 1938, she deeded the property to him, by a direct deed in which he was named as grantee and in which he also joined as grantor. The chancellor held that the deed violated section 506 of Carroll's Statutes, which was then in force, and further, that there was no consideration. He set the deed aside and restored the title to Mrs. Cooper.

Under the decision in Smith v. Hughes, 292 Ky. 723, 167 S.W.2d 847, the deed did not violate section 506. Nor is there any basis for the claim of no consideration, because there was no evidence that Mrs. Cooper had paid any of the original purchase price of the property or had any equitable claim to ownership. There is some claim that Mr. Cooper obtained the deed by fraud, in that he deserted his wife three years after the deed was executed, but there is no merit in that claim. The deed should not have been set aside. It will be sufficient that Mrs. Cooper has the life use of the home by way of alimony.

The appellant contends that Judge S. M. Ward, who was the regular judge of the Perry Circuit Court, had no authority to hear the case or enter judgment because of an agreement by the parties, made prior to the first appeal, that Hon. J. P. Harkins should preside as special judge "until the final determination" of the case. When the action was first instituted, Hon. Roy Helm was regular judge of the Perry Circuit Court. He disqualified himself, Mr. Harkins was agreed upon as special judge, and as such he heard the case and entered the first judgment. When the case was remanded after our reversal of the first judgment, Judge Ward, who had succeeded Judge Helm on the expiration of the latter's term during the pendency of the case, assumed jurisdiction of the case and proceeded to try it and enter the judgment that is now before us.

Since there is a question as to whether "final determination" of the case was intended to embrace a new trial following the reversal of a judgment on appeal, and if so, whether the parties could legally agree for a special judge to preside in the case until such "final determination," see KRS 23.230, we cannot say that the judgment entered by Judge Ward was void. Whether it was erroneous, by reason of his replacement of the special judge, is immaterial, in view of the fact that we are reversing the judgment on other grounds, with directions as to the entry of a new judgment. Under the circumstances, and taking into consideration the fact that the evidence was taken entirely by depositions, we have reviewed the case and reached our conclusions without giving any weight to the findings of the trial judge. Cf. Dotson v. Burchett, 301 Ky. 28, 190 S.W.2d 697, 162 A.L.R. 636.

Finally, the appellant contends that the lower court erred in sustaining the attachment of stock owned by him in the Peoples Bank of Hazard, and in directing in the judgment that the stock be surrendered and sold, and that accumulated dividends in the hands of the bank be turned over to

Mrs. Cooper to apply on her alimony award. When the action was commenced, an order of attachment was served on the bank. At that time Mr. Cooper owned 125 shares of stock in the bank, and he had the certificates in his possession in Florida. Subsequent to the attachment, the bank declared a stock dividend of one hundred percent, and the certificates representing the additional 125 shares due Mr. Cooper were issued but held by the bank. Also, the bank held cash dividends in the amount of $24,600 which accumulated on the stock while the action was pending.

Mr. Cooper's contention is that the attachment was invalid because the stock certificates were not actually seized by the attaching officer, or surrendered to the bank, or their transfer enjoined, as required by KRS 274.130.

The certificates in the possession of Mr. Cooper were not transferred by him, and therefore the rights of purchasers or creditors are not involved. Mr. Cooper appeared in the action, and the judgment enjoined him from transferring the stock. It is our opinion that the question of whether the attachment originally was valid became moot when the trial court, having jurisdiction of the person of the defendant and possessing equitable powers, entered a judgment enjoining the defendant from transferring the stock and requiring him to surrender the certificates to the master commissioner.

The appellee has filed a motion that the appeal be dismissed, on the ground that the appellant is in contempt of court by reason of his failure to comply with the judgment of the lower court requiring him to surrender the stock certificates. Enforcement of the judgment was restrained, pending the appeal, by an order of this Court, see Cooper v. Ward, Ky., 247 S.W. 2d 365, and therefore the appellant is not in contempt of court. The motion is overruled.

A motion by the appellant, for an order restraining Mrs. Cooper from attempting to enforce the judgment pending appeal, was passed to the merits. That motion is now overruled.

The judgment is reversed, with directions to set it aside, and to enter a judgment granting Mrs. Cooper lump-sum alimony in the amount of $35,000, and the life use of the family home in Hazard. The judgment shall further contain the same provisions as in the reversed judgment, with respect to the stock in the Peoples Bank and the accumulated dividends on that stock. The judgment shall be entered by the present regular judge of the Perry Circuit Court.

COMBS, J., not sitting.